THE STATE OF FLORIDA, *ex rel* EDWARD NILES, *Petitioner, Plaintiff in Error, v.* JEFFERSON D. SMITH, *City Jailor of the City of Jacksonville, Defendant in Error.*

1. The City of Jacksonville may regulate the sale of milk within its territorial limits and require a license tax therefor.

2. The City of Jacksonville may authorize a Board of Health created by it to prescribe the forms to be used by applicants for licenses, it not appearing that the Board had added therein burdens outside those fixed by ordinance.

3. A Board of Health may be given power to withhold license. to sell milk, if the place of business or wagons or vehicles be not "in a sanitary condition and fit and proper for the use and purpose to which they are intended to be put."

This case was decided by Division A.

Writ of error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*S. T. Shaylor* and *L. R. Milton,* for Plaintiff in Error;

*P. H. Odom,* for Defendant in Error.

COCKRELL, J.—This is a writ of error allowed to the judgment of the Circuit Court for Duval County, remanding Edward Niles to serve a sentence imposed by the

municipal court of Jacksonville, for selling milk in said city without a license.

The ordinance regulating the sale of milk is too long for full insertion in this opinion, but the first section reads:

"SECTION 1.   Every person, firm or corporation desiring to sell or deliver milk or cream in the City of Jacksonville shall make application annually to the City Re corder for a milk license, paying therefor the sum of Three ($3.00) Dollars, and the license therefor shall be issued at the time and in the manner as now provided by ordinance.   Such application shall be made on a printed form prescribed by the City Board of Health, and applicant, if an individual, shall state his or her full name and residence, and if a firm or corporation shall state therein the full name and residence of each of its officers, place at which it is proposed to carry on the business, the number of wagons or other vehicles to be used in said business, and such other data as the City Board of Health shall require. The City Recorder, upon receipt of such application, shall hand the same to the City Health Officer, who shall investigate or have investigated, the place of business described in such application and the wagons and other vehicles if any, intended to be used by such applicant. If such places of business, and such wagons or vehicles are found, upon such investigation, to be in a sanitary condition and fit for the use and purpose to which they are intended to be put, the City Health Officer shall, within forty-eight hours, report said applicant favorably to the City Recorder, and the Recorder shall issue a license to carry on, engage in and conduct the business of vendors of milk in Jacksonville, at the place designated in such application only.   All licenses granted pursuant to this ordinance may, at any time, be revoked by the City

State *ex rel.* Niles v. Smith—Opinion of Court.

Board of Health, for the persistent, repeated or wilful violation of any law or ordinance, or of any regulation of the Board of Health governing the sale of milk in the City; Provided, however, that no such license, shall, at any time, be revoked by the City Board of Health, unless it shall have first given the holder of same not less than ten days notice in writing of its intention to revoke such license, and an opportunity to be heard why such should not be done. This proviso shall not be interpreted to apply to cases where the sale of milk or cream may be temporarily prohibited by the City Health Officer because of disease in the families, where the milk is produced or handled, temporary unsanitary conditions or similar cases. Such licenses shall not be transferable and no license issued hereunder shall entitle or authorize the holder thereof to carry on, engage in or conduct the business of vendor of milk in any place or places other than that described or set out in such license. The location of such place of business can be changed only on approval of the City Board of Health."

It is first objected that the city has no authority to impose a license tax upon the vending of milk in that the State law providing "all boats or vehicles engaged in the sale of vegetables or fresh meats, the product of the farm or plantation, and which is butchered upon the farm, and plantation products, fish and oysters, shall not be considered as peddling boats or vehicles." Chapter 5597, Laws of 1907, p. 45. Many replies to such contention may be made. Should we concede that milk comes within the statute, and that it is a tax upon the milk wagon, it appears that this is not so much a license tax, but rather an inspection tax (City of Norfolk v. Flynn, 101 Va. 473, 44 S. E. Rep. 717, 99 Am. St. Rep. 918) ; a more emphatic answer, however, is found in the Charter of

Jacksonville, Chapter 5065, Laws of 1901, conferring power to levy and impose license taxes for municipal purposes upon any and all occupations and upon any and all privileges ——————— as fully and to the same extent and in the same manner that the Legislature could impose such license and taxes for State purposes, and without regard to any of the provisions of any general revenue law of this State not specifically repealing this act." The general license law of 1907 does not attempt to supersede, supplant or repeal any special charter rights, but it does repeal and supersede section 33, chapter 5106, Laws of 1903, relied on by one of the counsel for the plaintiff in error.

The record does not show nor does the plaintiff in error claim that he has been refused a license nor had his license revoked, and having found the power in the city to require a license to vend milk, whether under the power to tax privileges or occupations, or under its specific power "to regulate the inspection of milk" and generally "to pass all ordinances necessary to the health, convenience and safety of the citizens," we might well refuse to consider any other objections to the ordinance until a proper case is made before us. In Ex parte Theisen, 30 Fla. 529, 11 South. Rep. 901, 32 Am. St. Rep. 36, the petitioner was directly affected by the invalid portion of the ordinance, in that his liquor saloon was within the prescribed distance of a church, and under the ordinance the grant or refusal of the license at that location was controlled by the whim or caprice of the Board, with no guide to regulate their action.

We may add, we think with propriety, that the provision for the use of printed forms to be used by applicants for license, the form to be prescribed by the Board of Health, is but in line with the General Revenue Laws

of the State, which always require the printed forms to be prescribed by the State Comptroller. If the City Board of Health should add. unreasonable and improper over-inquisitorial questions to be answered and the applicant should refuse for that reason to comply with the form, he could then raise the question of the propriety of those questions, but we are not advised that the Board of Health has added any questions not included in the ordinance.

Again, the Board of Health is not given uncontrolled discretion as to granting a license originally or in acting upon requests to change the location of the dairy. As we read the ordinance it has only to ascertain if the place of business and the wagons and vehicles "be in a sanitary condition and fit and proper for the use and purpose to which they are intended to be put," and if they are then the permit is issued.

The provision for revoking the license is probably controlled by section 16, which confers the power after a second conviction in the municipal court during a license year. The fine varies from five to one hundred dollars, thus anticipating minor or major infractions, and there is vested a discretion in the Board of Health to further penalize, after notice, by withdrawing the license. There may be some doubt as to whether this discretion may be properly safeguarded, but as we said .at the outset we are not now called upon to solve the doubt.

We may add in conclusion that the courts with apparent unanimity uphold these milk inspection ordinances and that we are not impressed seriously with any of the many attacks made upon the real life of the ordinance before us. The Virginia case cited *supra* answers in detail many of these objections. See State v. Nelson, 66 Minn. 166, 68 N. W. Rep. 1066, 61 Am. St. Rep. 399; Lit-

tlefield v. State, 42 Neb. 223, 60 N. W. Rep. 724, 28 L. R
A. 588; Demms v. City of Baltimore, 80 Md. 164, 30 Atl
Rep. 910, 45 Am. St. Rep. 339.

The judgment is affirmed.

WHITFIELD, C. J., and SHACKLEFORD, J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the
opinion.