STATE, *ex rel.* IRVIN W. HARKOW, v. W. J. McCARTHY, as the Chief of Police of the City of Miami, etc.

171 So. 314.

Division A.

Opinion Filed December 10, 1936.

434

*Milton Weiss,* for Plaintiff in Error;

*J. W. Watson, Jr.,* and *Loftin, Stokes & Calkins,* for Defendant in Error.

BROWN, J.—The decision of this case depends upon the validity *vel non* of the Miami "Parking Meter Ordinance," for the violation of which plaintiff in error was arrested. In habeas corpus proceedings brought by him upon the ground that the ordinance was invalid, the Circuit Judge entered an order remanding plaintiff in error to custody.

Prior to the adoption of this ordinance, the City of Miami, in an effort to solve the problems incident to an ever increasing motorized traffic, had fixed ten minutes as the maximum parking time on certain down-town streets, relying upon its police force to enforce the regulation, the general public paying all the cost of such enforcement.

Not satisfied with the results, the City Commissioners, on January 16, 1936, adopted Ordinance No. 1387, which is in question here. The ordinance authorizes the City Manager to establish, from time to time, as traffic conditions require, zones to be known as parking meter zones in such streets as might be selected, and, in such zones, install and maintain parking meters.

The City Commissioners purchased parking meters and caused them to be installed and maintained in such zones. The meters are required to be placed in such manner as to display a signal that the parking place adjacent to the meter is or is not legally in use. Each meter is required to mechanically display, on the deposit of a five cent coin, a signal indicating legal parking for the period of time established for the zone, and, to indicate, by the mechanical dropping of a signal, when the lawful parking time has expired.

The City Manager is required to have painted lines placed on the curb or on the street, adjacent to each parking meter, for the purpose of designating the parking space for which the meter is to be used.

It is made unlawful for any person to use any such parking space, without first depositing in the meter a five cent coin and causing the meter to begin marking the allowed time for legal parking in the space; it is also made unlawful for any person to park a motor vehicle in the parking space for a longer period of time than that indicated by the meter.

As a result of the use of parking meters, automobilists are now allowed to park their vehicles for *thirty* minutes instead of *ten* minutes, as formerly. And those who enjoy the privilege, rather than the general public, pay the extra cost of providing and maintaining the means to the enjoyment of the privilege, and the extra cost of the supervision and policing of it.

On April 24, 1936, Irvin W. Harkow parked his motor vehicle on Northeast First Avenue, between East Flagler Street and Northeast First Street, in the City of Miami, Florida, in a thirty minute parking space, and refused to deposit a five cent coin in the meter. An affidavit of complaint was made against him, before the City Clerk, for the violation of Ordinance No. 1387. A warrant issued for his arrest, and, while in the custody of the Chief of Police, Harkow applied to the Circuit Court for a writ of habeas corpus. The writ issued and the Chief of Police answered the writ. A copy of the ordinance is attached to the answer.

There is no bill of exceptions in the transcript, though time was allowed in which to present and settle a bill of exceptions.

We are dealing here, not with the right to *travel* the public streets, which is not denied by either party, but with the power of a municipality to regulate the *parking* of motor vehicles within that part of the public streets primarily designed for travel, by means of which parking such vehicles are allowed to stand in the street either for unregulated and indefinite, or regulated and limited, periods of time, to the exclusion of other vehicles.

The City of Miami has ample charter authority for the enactment of an ordinance of this nature. Of course, all ordinances must be reasonable and not conflict with constitutional guaranties and limitations.

From a constitutional standpoint, there is no doubt of the power of a municipality to regulate by ordinance traffic on its streets when reasonably necessary for public safety and good order, and to reasonably limit the parking time of motor vehicles using streets in congested areas. Ordinances have been upheld limiting such parking period to such time only as might be necessary to take on and let off

passengers and baggage, and ordinances have also been upheld which entirely excluded motor vehicles from the use of certain streets, parks and boulevards. The individual's ordinary right as a member of the public to the free use of a city's streets in the normal pursuit of his private business or personal pleasure must sometimes yield to the paramount rights and necessities of the general public. This right of the individual cannot be taken from him, but it is subject to regulation in the interest of the public good. Florida Motor Lines v. Ward, 102 Fla. 1105, 137 So. 167; 1. Blashfield's Cyc. of Automobile Law, 17; McCaffery v. Smith, 41 Hun. (N. Y.) 117; Welsh v. Morristown, 98 N. J. Law, 121 Atl. 699; Taylor v. Roberts, 84 Fla. 654, 94 So. 874; State v. York, 90 Fla. 625, 106 So. 420; State v. Carter, 205 N. C. 761, 172 S. E. 415. In Lutterloh v. Mayor, etc., of Cedar Keys, 15 Fla. 308, it was observed that: "The right of occupancy of the street by the public is a mere easement or right of passage."

Petitioner in the court below attacked the ordinance on the grounds that it was unreasonable; that it amounted to the taking of property without due process of law, and that it was an abuse of the police power for the purpose of raising revenue. The order of the Circuit Judge remanding petitioner to custody recited that the cause had come on for hearing before him upon the petition for the writ, the writ and the return thereto, "and the evidence adduced at the hearing" thereon. As no bill of exceptions has been brought up, we are confined to the face of the record. The return denied the above allegations of the petition and set out the applicable charter provisions showing the power to enact such an ordinance, and set out the ordinance itself.

The ordinance is certainly not invalid upon its face. In State v. York, *supra,* this Court said:

"In the instant case, we cannot assume that the quoted provision of the ordinance was arbitrarily adopted by the governing body of the city without regard to the reasonable requirements of local conditions. *Per contra,* when the municipal power to regulate is shown to exist, a regulatory ordinance valid on its face, and pursuant to the power, will be presumed to be applicable to and justified by local conditions, unless the contrary is made clearly to appear. Says Judge Dillon (Vol. 2, Sec. 592, Dillon Munic. Corp.): 'It is of course within the power of the court to declare an ordinance to be *unreasonable and void on its face* by a mere inspection of the ordinance, if it is clearly of that character because of the inherent nature of its provisions. But the power of the court to declare an ordinance void because it is unreasonable is one which must be carefully exercised. When the ordinance is within the grant of power of the municipality, the presumption is that it is reasonable, unless its unreasonable character appears upon its face. But the courts will declare an ordinance to be void because unreasonable *upon a state of facts being shown* which make it unreasonable. If the ordinance is not inherently unfair, unreasonable or oppressive, the person attacking it must assume *the burden of affirmatively showing* that as applied to him it is unreasonable, unfair and oppressive.' State, *ex rel*. Ellis, v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358; Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834."

Plaintiff in error contends that the only proper expense which the City could lawfully charge for the privilege of parking motor vehicles in city streets is the cost to the city which the operation or enforcement of the particular ordinance relating thereto has caused, and argues that the city will receive from these parking motors an income

greatly in excess of the cost of enforcement. In this con-nection reference is made to alleged facts which may have been adduced before the trial court, but which are not properly brought before us. On the other hand, counsel for the city argue that the evidence adduced below was amply sufficient to convince the trial court that this contention is entirely unfounded.

It is also argued by counsel for the City that inasmuch as the parking of motor vehicles in down town public streets is a privilege the City may employ the means reasonably necessary to make effective the regulatory ordinance and to safeguard the restrictive parking privileges granted. That had the City augmented the regular police force sufficiently to enforce the ordinance, no one could have questioned such action. That, in the exercise of a choice of same, the City elected to employ mechanical policemen to aid in large part the accomplishment of that purpose, because they are efficient and economical and enable the authorities to pass the cost of providing parking privileges on to those who enjoy those privileges. That the ordinance, as indicated indeed by its provisions, was adopted in the *bona fide* exercise of the police power, and not primarily for the raising of revenue. That the aim of the ordinance is to regulate traffic and to keep such traffic as liquid as is reasonably possible, and that the cost of providing parking privileges, and the extra cost of supervising and policing parking, is placed by the ordinance where it belongs—on those who individually enjoy such privilege.

In support of these contentions, counsel for the City cite: State v. Quigg, 86 Fla. 51, 96 So. 8; State v. Cahoon, 106 Fla. 299, 143 So. 253; Steiner v. City of New Orleans (La.) 136 So. 596; Jackson v. Copelan (Ohio) 198 N. E. 596; Tomlinson v. City of Indianapolis, 144 Ind. 142, 43 N. E.

9; Blue Coach Lines v. Lewis, 220 Ky. 116, 294 S. W. 1082; State of Missouri v. Murphy, 170 U. S. 78, 42 L. Ed. 955; Morgan's R. & Steamship Co. v. Louisiana, 118 U. S. 455, 30 L. Ed. 237; 17 R. C. L. 539; 42 C. J. 645, 696; State v. Smith, 62 Fla. 93, 57 So. 426; Blanchard v. Ivers, 40 Fla. 117, 24 So. 66; Atkins v. Philips, 26 Fla. 281, 8 So. 429; Morf v. Bingham, 56 S. Ct. 756, 298 U. S. 407, 80 L. Ed. 1245; State v. Wisconsin Constructors, 269 N. W. 238; Appelton v. New York, 219 N. Y. 150, 114 N. E. 73; City of Duquesne v. Fincke (Pa.) 112 Atl. 130; People v. Atwell, 323 N. Y. 96, 133 N. E. 364.

Undoubtedly a city may not "make gain under an illegal exercise of the police power," but it is well settled that a license fee may be of a sufficient amount to include the expense of issuing the license and the cost of necessary inspection or police surveillance connected with the business or calling licensed, and all the incidental expenses that are likely to be imposed upon the public in consequence of the business licensed. "The courts will not seek to avoid an ordinance by nice calculations of the expense of enforcing police regulations, but will promptly arrest any clear abuse of the power." Atkins v. Philips, *supra;* 17 R. C. L. 539.

There being no evidence properly brought before us to the contrary, the presumption is that the judgment of the trial court was justified by the evidence adduced at the hearing. If it had been shown by competent evidence before the Circuit Judge either that the streets on which parking meters have been installed under this ordinance are not streets where the traffic is sufficiently heavy to require any parking regulations of this sort, or that the city was making inordinate and unjustified profits by means of the parking meters, and was resorting to their use not for regulatory

purposes, but for revenue only, there might have been a different judgment.

In the case of Frost v. R. R. Commission of California, 271 U. S. 583, 70 L. Ed. 1101, Mr. Justice McREYNOLDS observed that: "The States are now struggling with new and enormously difficult problems incident to the growth of automobile traffic, and we should carefully refrain from interference unless and until there is some real, direct and material infraction of rights guaranteed by the Federal Constitution."

This observation is equally applicable to the cities of Florida today.

The authorities sustain the contentions of defendant in error as to the legal principles applicable to the case here presented, and the judgment of the court below is therefore affirmed.

Affirmed.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and BUFORD, J., concur in the opinion and judgment.