60 So.2d 658 (1952)
CITY OF PANAMA CITY
v.
STATE et al.
Supreme Court of Florida, Division A.
September 26, 1952.
Warren L. Fitzpatrick, Panama City, for appellant.
Mercer P. Spear, Panama City, for appellees.
Wilfred C. Varn, Panama City, amicus curiae.
HOBSON, Justice.
This is an appeal from a final decree entered on April 26, 1951, which dismissed appellant's Petition for Validation of Parking Meter Revenue Bonds in the amount of $165,000. The purposes for which the proposed bonds were to be issued were: financing the cost of the reconstruction, paving, improvement of, and the installation of parking meters on, certain streets and roads in the City of Panama City, Florida.
The question for our determination is whether Chapter 26118, Special Acts of 1949, Laws of Florida, is sufficiently broad to authorize the issuance by the appellant of revenue bonds to be amortized over a period of approximately 20 years by use of excess revenue derived from fees, rentals or other income from the operation of parking meters.
We deem it appropriate at this point to observe that the proposed bonds state they are payable "* * * solely from and secured by a first and exclusive lien upon, and irrevocable pledge of, the excess parking meter revenues of said City * * *." Other language contained in the proposed bonds expressly provides that said bonds will not constitute an indebtedness of the *659 City of Panama City within the meaning of any constitutional, statutory or charter provision or limitation or a pledge of the full faith and credit of the City. There is a specific covenant that the holder or holders of any of the proposed bonds shall never have the right to require or compel the exercise of the ad valorem taxing power of said City to enforce payment of the principal or interest or to create a sinking fund for such purpose.
It is obvious that the real or primary purpose for the issuance of the proposed bonds is to provide funds with which the City may reconstruct, pave and improve certain streets or roads within its corporate limits. If this were not otherwise clearly apparent it is certainly made so by the language in the form of bond which is attached to the Petition which reads: "This bond is one of an authorized issue of bonds * * *, issued for the purpose of financing the cost of the reconstruction, paving and improvements of streets and roads in said City * * *."
In the case of State v. City of Miami Beach, Fla., 47 So.2d 865, we approved the validation of a bond issue which had as its purpose the raising of funds to provide for acquiring, equipping, maintaining and improving existing and additional parking facilities for the City of Miami Beach. It is not difficult to consider the acquiring, equipping, maintaining and improving of existing and additional parking facilities as a proper exercise of the police power when such facilities are unquestionably needed and, practically speaking, a public necessity in order to properly regulate parking of automobiles and other vehicles. It is, however, an entirely different matter to broaden the scope of the police power to such extent as to hold that a bond issue may be floated payable from excess parking meter revenues, for the purpose of obtaining funds with which to reconstruct, pave and improve streets and roads in a city.
The providing of additional parking facilities on or off existing streets when the regulation of vehicular traffic and the parking of vehicles require them is one thing but the reconstruction, paving and improvement of streets and roads generally bears no reasonable relationship to the parking problem of a modern city. Streets and roads are constructed, reconstructed, paved and improved primarily for the movement of vehicular traffic and only secondarily for parking purposes. Parking meters are placed upon streets, usually in the congested, down-town area, as a consequence of the existence of said streets. It appears to be getting the "cart before the horse" to attempt to use parking meter revenues for the purpose of reconstructing, paving and improving streets and roads to the end that parking meters may be placed upon them. We do not consider the case of State v. City of Miami Beach, supra, authority for the position taken by the appellant herein.
It is true that the reconstruction, paving and improvement of streets and roads is not entirely unrelated to the regulation and control of vehicular traffic but the relationship is too remote to justify the use for such purposes of revenues from parking meters which are authorized under the police power as rental fees which if properly classified as a species of tax would fall in the category of excise taxes. A city may in the exercise of the police power establish an excise tax or license fee and the revenue derived therefrom may be sufficiently large to bear "the expense of issuing the license and the cost of necessary inspection or police surveillance connected with the business or calling licensed, and all the incidental expenses that are likely to be imposed upon the public in consequence of the business licensed." State ex rel. Harkow v. McCarthy, 126 Fla. 433, 171 So. 314, 317. However, the courts cannot permit a clear abuse of the police power, nor will they approve the levy of taxes under the guise of an exercise of such power for the purpose of raising revenues with the end result, as in this case, of the city making inordinate and unjustified profits. The learned Circuit Judge found that in the year 1950 appellant derived a net profit or revenue of more than $27,000 from its operation of parking meters.
Chapter 26118, supra, which was a Special Act, authorizes the appellant to "Construct *660 or Acquire, and Improve or Extend, Water Systems, Sewer Systems, Gas Systems, Electric Systems, Tunnels, Bridges, or Any Other Undertakings or Facilities from Which Said City Derives or Will Derive Fees, Charges or Revenues". Section 2 of said Act defines the term "undertaking" to mean "water systems; sewer systems; gas systems; electric systems; tunnels; bridges; lighting systems; hospitals; causeways, and any other undertakings from which the city will receive or now receives fees, rentals or other revenues from the operation thereof." (Italics supplied.)
We can readily understand this definition to include the construction, acquisition or improvement of off-street parking facilities or additional parking facilities nearby or upon existing streets or roads because the establishment of such off-street or additional parking facilities would be an undertaking from which the City would receive "fees, rentals or other revenues from the operation thereof." No fee, rental or other revenue inures to the City from the ordinary and primary use of its streets. It is more than doubtful that a rental fee or license tax could be charged or levied by a city upon its citizens in order for them to enjoy their inherent right and privilege of ordinary use of the streets of a municipality. Indeed, parking meter fees or charges have been upheld solely upon the theory that a governmental unit has authority to make or levy them in the exercise of its police power and then only when the welfare of the people as a whole demands such action. Consequently, the reconstruction, paving and improvement of streets and roads cannot be said to be an undertaking "from which the city will receive or now receives fees, rentals or other revenues from the operation thereof."
We see no occasion to discuss the doctrine of ejusdem generis. Concededly, it is a rule of construction which may be employed by the courts in an effort to determine the legislative intent. It has no place in our consideration of this case because it is very clear from the language used by the legislature in Chapter 26118, supra, that it did not intend to authorize the construction, reconstruction, acquisition or improvement of streets and roads when it used the words "or Any Other Undertakings or Facilities from Which Said City Derives or Will Derive Fees, Charges or Revenues". (Italics supplied.)
Moreover, appellant, should it issue the proposed bonds, would obligate itself to maintain existing parking meters and retain the present rates and charges as long as the parking meter revenue bonds remain unpaid. We are of the opinion and hold that the City of Panama City cannot by contract tie its hands and bind itself in such manner as to relinquish for a long, possibly indefinite, period of time its sovereign right and duty under the police power to regulate traffic. See Chase v. City of Sanford, Fla., 54 So.2d 370.
We conclude that the learned Chancellor was eminently correct in dismissing the petition which sought the validation of parking revenue bonds which had as their purpose the acquisition of funds with which to reconstruct, pave, improve streets and roads in the City of Panama City and to provide parking meters in or upon said streets and roads.
Affirmed.
SEBRING, C.J., and THOMAS and MATHEWS, JJ., concur.
TERRELL, J., dissents with opinion.
ROBERTS and DREW, JJ., not participating.
TERRELL, Justice, Dissenting.
The point for determination in this case is whether or not Chapter 26118, Special Acts of 1949, authorizes the City of Panama City to issue revenue bonds payable in 20 years, from income derived from parking meters, the proceeds of said bonds to be used for extending municipal facilities, particularly the paving of certain roads or streets within the city.
The majority opinion holds, that it would be perfectly proper to issue and use the proceeds of said bonds for the purpose of acquiring and improving parking facilities, *661 but to issue them for paving streets, would be an undue exercise of the police power. The practical effect of this interpretation is, that the city may issue bonds to acquire and provide a parking lot, but it cannot issue them to improve its streets to enable one to drive his automobile to the parking lot. I cannot follow any such reasoning, and, as I shall later point out, I do not think the police power is susceptible of any such interpretation.
I do not think however, that this is the prime fallacy in the logic of the majority opinion. The police power is an inherent power that may be employed within constitutional limits to promote the health, safety, morals, and welfare of the community. No attempt is made to define it in State or Federal Constitutions. The legislature is the sole judge of its scope, so long as canalized within constitutional boundaries. If a parking lot promotes the welfare and safety of a community, certainly an improved street to enable one to get to it must accomplish that purpose. When the police power is invoked, the question presented is whether or not the health, safety, morals or welfare of the community is promoted, whether or not parking meters have any relation to improving streets, is beside the question. Even if pertinent, it would be for legislative determination.
The majority opinion also holds that the proposal to pave city streets is an abuse of the police power, in that the revenues from the parking meters fall in the category of excise taxes and are much larger than the "expense of issuing the license and the cost of necessary inspection or police surveillance connected with the business or calling licensed, and all the incidental expenses that are likely to be imposed upon the public in consequence of the business licensed." State ex rel. Harkow v. McCarthy, 126 Fla. 433, 171 So. 314, is relied on to support this holding.
The cited case had to do with the interpretation of a city ordinance, and, while it held that the city could not make an undue profit by an illegal exercise of the police power, it also held "that the courts will not seek to void an ordinance by nice calculations of the expense of enforcing police regulations, but will promptly arrest any clear abuse of the power." The ordinance so assaulted was upheld on the theory that there was no showing of an abuse of the police power or that the city was making an unjustified profit from the parking meters.
In the case at bar, there is no showing that the parking meter charges are out of line with those imposed in other places, and no one is here complaining about them. The sole ground on which the police power is said to be abused is, that for the year 1950, there was a net revenue in the parking meter fund of $27,000. That this amount is excessive appears to have been the brain child of the court. It is a matter of common knowledge that there are always accumulations from such charges that the legislature, as in this case, may make provision for disposition in the interest of the public. It is not amiss to point out that there is no showing whatever as to how much net profit would accumulate from parking meters over a period of years. The legislature had knowledge of these accumulations and made provision for their use. Even if the accumulations amounted to $27,000 annually, it is not for this court to say that the amount for a community like Panama City was exorbitant, the legislature having spoken on the question and it is not for this Court to seek out "nice calculations" to avoid the effect of the act.
It is pertinent to point out that in this case, we are dealing with an act of the legislature, and if the rule applied to municipalities in the last cited case, ever applied to legislative acts in so far as they relate to state and county excises, it has long been abandoned. It is a matter of common knowledge that the fiscal policy for support of the state and county governments is very largely built around the gas tax, the liquor tax, the cigarette tax, the pari mutuel tax, inspection taxes and other excise taxes, every one of which have been upheld against the charge that they were an abuse of the police power.
For these and other reasons, I think the majority opinion is predicated on a wrong *662 interpretation of the police power, not only that, I think it overthrows a legislative determination of the scope of the police power in this case, which this court is not authorized to do. I therefore dissent.