120 So.2d 170 (1960)
TAMIAMI TRAIL TOURS, INC., a Corporation, Great Southern Trucking Company, a Corporation, Mercury Motor Express, Inc., a Corporation, and Central Truck Lines, Inc., a Corporation, Petitioners,
v.
CITY OF ORLANDO, Florida, a Municipal Corporation, Respondent.
Supreme Court of Florida.
April 13, 1960.
Rehearing Denied May 26, 1960.
Cecil H. Brown of Sutton, Brown & Turnbull and Raymer F. Maguire, Jr., of Maguire, Voorhis & Wells, Orlando, for petitioners.
Robert F. Lilley of Baker, Lilley & Baker, Orlando, for respondent.
ROBERTS, Justice.
We are here concerned with the validity of an ordinance of the City of Orlando, respondent here, purporting to regulate the loading and unloading of freight within the city, in its application to the petitioners, plaintiffs below, who are interstate common carriers operating in this state under certificates of public convenience and necessity issued to them by the Florida Railroad and Public Utilities Commission ("the Commission" hereafter). *171 The ordinance in question requires the owner or operator of a truck or trucks using the freight loading and unloading zones established by the city on its streets to apply for a "tag permit" for each such truck. Application for the permit is made to the City Tax Collector, who issues the permit "upon the payment of Ten Dollars ($10.00) for the first permit issued to an applicant and One Dollar ($1.00) for each succeeding permit issued to the same applicant." The permit is good for one year, and application therefor must be made and a new permit issued each year for each such truck.
The basis of petitioners' complaint for injunctive relief from the enforcement of the ordinance against them is that, as auto transportation companies authorized to do business in this state by the Commission and operating under the jurisdiction of that body pursuant to Ch. 323, Florida Statutes, F.S.A., they are required to and do pay the mileage tax prescribed by § 323.15; and that under the express provisions of § 323.15, such mileage tax "shall be in lieu of all other taxes and fees of every kind, character and description, state, county or municipal, including excise and license taxes levied or imposed against such auto transportation companies, or the operation of such business and facilities thereof, or their property * * *." (Emphasis supplied.) Section 323.07 provides also that "No municipality shall have the right to require any such auto transportation company to furnish any bond or insurance policy, or pay any license, fee or tax except as herein provided."
The trial judge considered the pleadings and affidavits, found that there was no conflict between the quoted provisions of Ch. 323 and the ordinance, and dismissed the complaint. On appeal thereto by the plaintiff-petitioners, the Second District Court of Appeal affirmed. See Tamiami Trail Tours, Inc. v. City of Orlando, Fla.App. 1959, 113 So.2d 723, for the appellate court's decision.
In affirming, the appellate court found that the ordinance was a valid exercise of its police power by the municipality in the regulation of traffic on its streets, and that the exaction of the fee for the permit was not a tax but a fee incidental and referable only to the police power of the city to regulate traffic and parking. It held, under the authority of decisions from other jurisdictions upholding parking meter ordinances alleged to run counter to a general law imposing a state tax on motor vehicles and exempting the owners thereof from the payment of any license tax or fee to any municipality, that the ordinance requiring plaintiffs to obtain "tag permits" from the city in order to utilize the loading zones was "not violative" of Chapter 323, supra.
By petition for certiorari the petitioners contend that the decision of the appellate court is in direct conflict with the decision of this court in Mercury Cab Owners Association v. Miami Beach Air Transport, Inc., Fla. 1955, 77 So.2d 837. In that case this court held that a carrier operating under a certificate of public convenience and necessity issued by the Commission could not be compelled to secure such a certificate from the City of Miami Beach as a condition to carrying on its operations within the city. The petitioners argue that, just as there is no concurrent jurisdiction of the City of Orlando and the Commission to license their operations within the city, there is no concurrent jurisdiction, under the express terms of Ch. 323, supra, to tax such operations; and they state that "there is no conflict in the evidence that this tax is on the operation of the business of carriage which is within that certificate [issued by the Commission]." The respondent contends that the appellate court rightly concluded that the ordinance was a lawful exercise of the police power and that "the pecuniary extraction therein contemplated [was] incidental to and referable only to such exercise." It appears to be conceded that if the permit fee was, in fact, in the nature of a *172 tax, it is violative of Ch. 323, supra, and rightly so. See Anderson v. Wentworth, 1918, 75 Fla. 300, 78 So. 265; Langston v. Lundsford, 1936, 122 Fla. 813, 165 So. 898.
Before discussing this question it should be noted that the petitioners are not objecting to the city's regulation of traffic under its police power by the establishment of freight zones, but merely to the imposition upon them of a fee for the use of such freight zones. They point out that, by Fla. Stat. § 323.16(1), F.S.A., the Legislature has provided for the payment by the State Comptroller from the mileage taxes collected from petitioners the sum of $25 annually to each city and town in which any such company maintains a depot, warehouse, station or agent; that each of them maintains a station in the City of Orlando; that the city has received annually this sum based upon each of their certificates; that, presumably, the Legislature considered this sum ample for the cost of any police or traffic regulation inuring to the benefit of the petitioners; and that, if this sum is in fact insufficient, the proper way to correct the insufficiency is by amendment of § 323.16(1), supra.
The conclusion is also irresistible that, if the City of Orlando can exact this type of fee from the petitioners, then all cities on the route of a carrier can repeat the procedure, thereby building up an overhead for the carrier that obviously was not contemplated in the rate fixed or approved for such carrier by the Commission.
Assuming, arguendo, however, that in the exercise of its police power to regulate and control traffic the city could enact a licensing ordinance regulating the operations of the petitioners for this purpose, the fact remains that the ordinance shows on its face that the requirement for the permit and fee has nothing whatsoever to do with regulating the loading and unloading of freight and/or traffic.
It is, of course, well settled that the power to regulate includes the power to license as a means of regulating, and that a reasonable license fee may be charged in an amount sufficient to bear "the expense of issuing the license and the cost of necessary inspection or police surveillance connected with the business or calling licensed, and all the incidental expenses that are likely to be imposed upon the public in consequence of the business licensed." State ex rel. Harkow v. McCarthy, 1936, 126 Fla. 433, 171 So. 314, 317. But it is only in those cases where regulation is the primary purpose of a licensing ordinance or statute that the exaction of a fee therefor can be especially referred to the police power. 2 Cooley on Taxation (3d ed.) p. 1127. And where a license is required and a fee exacted solely for revenue purposes and the payment of such fee gives the right to carry on the business without any further conditions, it is a tax. See Bateman v. City of Winter Park, 1948, 160 Fla. 906, 37 So.2d 362; 33 Am.Jur., Licenses, § 19, p. 341.
Here, despite the statement in the ordinance that "Whereas, a system of permits providing for the use of said loading and unloading zones will expedite the proper regulation and control of said zones," the ordinance does not require that such zones be used for the loading and unloading of freight; it merely prohibits the use thereof without a "tag permit". No standards are prescribed for the guidance of the City Tax Collector in granting or denying a permit to use the freight zones  such standards being a sine qua non to the validity of a true regulatory licensing ordinance or statute. See State ex rel. Ware v. City of Miami, Fla.App. 1958, 107 So.2d 387, and cases cited. Nor does it provide for any regulation of the licensee or "permittee", once the permit is issued, which is the usual concomitant of a license proper and one of the distinctions between a regulatory fee exacted under the police power and a tax. See Bateman v. City of Winter Park, supra, 37 So.2d 362. The permits are issued and the fee collected by the City Tax Collector  further confirmation, if confirmation were *173 needed, that the fee is exacted solely for revenue purposes. The fact that all or a part of the revenue derived from the permit fees may be allocated by the City Tax Collector to the cost of collecting the fee and to the police department for the enforcement of its traffic ordinance establishing freight zones (although there is no hint or suggestion in the ordinance that this will be done) cannot change the essential character of the provisions of the ordinance respecting the tag permits and fees and, as shown, in this respect it is a non-regulatory, purely revenue-producing, measure.
The conclusion is therefore inescapable that, insofar as its provisions relating to "tag permits" are concerned, the ordinance in question is naught but an attempt to impose an excise tax upon petitioners and others similarly situated, either for the privilege of using the city's freight zones or upon the operation of their business within the city. This it obviously cannot do, under the express provisions of Ch. 323, quoted above, and the decisions of this court first above cited. For decisions of other courts reaching the same conclusion in similar cases see Eastern Ohio Transport Corp. v. City of Wheeling, 1943, 115 W. Va. 293, 175 S.E. 219; City of Pineville v. Meeks, 1934, 254 Ky. 167, 71 S.W.2d 33; City of Phoenix v. Sun Valley Bus Lines, 1946, 64 Ariz. 319, 170 P.2d 289; Payne v. Massey, 1946, 145 Tex. 237, 196 S.W.2d 493.
The parking-meter decisions relied upon by the appellate court in holding to the contrary are readily distinguishable. Ordinances providing for the establishment and maintenance of a parking-meter system of traffic control appear to be sui generis, since parking meters operate per se to "regulate traffic and keep such traffic as liquid as is reasonably possible." See State ex rel. Harkow v. McCarthy, 1936, 126 Fla. 433, 171 So. 314, 316. The deposit of the fee in the parking meter automatically licenses or permits the driver to use the metered parking space for the authorized number of minutes, and the parking meter acts as a mechanical policeman to monitor the use of the space. Thus, the parking meter fee is not merely an incident of and attributable to the "license" to use the parking space  the payment thereof operates as an integral and working part of the parking-meter system of traffic control. It is, literally, a "regulatory" fee, even though as stated in State ex rel. Harkow v. McCarthy, supra, 126 Fla. 433, 171 So. 314, 315, "those who enjoy the privilege [of parking in a metered space], rather than the general public, pay the extra cost of providing and maintaining the means to the enjoyment of the privilege * * *". On the contrary, the requirement for the tag permit and fee made by the ordinance in question is not "regulatory" in any sense of the word, as shown above; and the only resemblance between a parking meter fee and the "tag permit" fee here involved is that "those who enjoy the privilege" of parking in a metered space or a freight zone, pay for such privilege. Absent the primary purpose of regulation as in the case of the parking-meter fee, the exaction of the fee for use of the freight zone can be none other than a tax on such privilege. It is clear, therefore, that the parking-meter decisions are not, in fact, authority for upholding the validity of the permit fee as one attributable solely to the exercise of the police power.
It might be noted that the petitioners do not contend that they may use the metered parking spaces available to the public as a whole without paying the parking-meter fee, and rightly so. As noted above, a parking-meter system or traffic regulation is a valid exercise of its police power by a municipality, the fee for which is an integral  not merely incidental  part of such system; and there is nothing in Ch. 323 relieving petitioners from the duty of compliance with the valid traffic regulations imposed upon the public as a whole by a municipality. Similarly, petitioners could not avoid the payment of a toll for the use of a *174 toll bridge or toll road exacted by the State from the public as a whole on behalf of the holders of the unpaid bonds from the proceeds of which such road or bridge was constructed. In its commonly accepted sense a toll is "a proprietor's charge for the passage over a highway or bridge, exacted when and as the privilege of passage is exercised," Carley & Hamilton v. Snook, 1930, 281 U.S. 66, 50 S.Ct. 204, 207, 74 L.Ed. 704; and since such a toll would be exacted by the State on behalf of the true proprietors  the unpaid bondholders  we do not conceive it to be a "license, fee or tax" in lieu of which the auto mileage tax is imposed upon petitioners. Cf. Cahoon v. Smith, 1930, 99 Fla. 1174, 128 So. 632.
For the reasons stated above, the decision of the District Court of Appeal here reviewed is quashed with directions to reverse the decree of the trial court and remand the cause to the trial court for the entry of a decree in accordance with this opinion.
It is so ordered.
THOMAS, C.J., TERRELL and HOBSON, JJ., and GILLIS, Circuit Judge, concur.
DREW and O'CONNELL, JJ., dissent.
DREW, Justice (dissenting).
I cannot get across the jurisdictional threshold in this case. Measured by the pronouncements of this Court in many cases that our jurisdiction in the conflicts field is to stabilize the law by a review of decisions which form patently irreconcilable conflicts[1] and that in order to constitute a conflict of decisions, such must be on a question of law involved and determined and such that one decision would overrule the other if both were rendered by the same court,[2] there is simply no predicate upon which we may rightfully question the correctness of the subject decision of the district court. Unless there is a conflict within the meaning of the Constitution as interpreted by us, we simply have no jurisdiction to question the correctness of the appellate court's decision, no matter what our view on the subject may be.
I interpret the majority opinion to hold that the decision of the district court is in direct conflict with the Mercury Cab case.[3] The opinion first discusses that case and, later on, observes "* * * the ordinance in question is naught but an attempt to impose an excise tax upon petitioners and others similarly situated, either for the privilege of using the City's freight zones or upon the operation of their business within the City. This it obviously cannot do, under the express provisions of Ch. 323, quoted above, and the decisions of this court first above cited." In examining the Mercury Cab case, however, we find that the question there was "whether or not the holders * * * [of certain certificates of public necessity and convenience from the Florida Railroad and Public Utilities Commission by certain cab companies] are required to secure certificates of convenience and necessity from the City of Miami Beach as a condition to carrying on the operations authorized by the Florida Railroad & Public Utilities Commission." [77 So.2d 838.] That was the sole question involved. This opinion, after quoting from previous decisions of this Court, merely held that under Section 323.29, F.S.A., the Railroad Commission was the only regulatory body which could, under the law, exercise complete and effective jurisdiction over cabs whose primary operations involved regular runs from fixed terminals outside the municipal area as distinguished from *175 those cabs operating beyond the area as purely an incidental part of their operations.
In the instant case we are concerned with an entirely different statute embracing a wholly different concept. The petition for certiorari states that the district court of appeal was presented with the question of:
"Where it is necessary in the ordinary course of transacting its business for an auto transportation company as defined in Chapter 323 Florida Statutes, 1955 (now 1957), which company is paying the mileage tax therein provided for, to use the freight loading and unloading zones designated on the streets of a municipality, for the expeditious loading and unloading of freight, can said municipality levy or impose a tax or fee upon such company for the lawful use of said freight zone, notwithstanding the provisions of Section 323.15 of said Statutes?"
and, in deciding said question, held:
"* * * The ordinance requiring plaintiffs to obtain `tag permits' from the defendant in order to utilize loading zones, under the circumstances of this case, is not violative of Chapter 323, Florida Statutes 1957 and the final decree of the lower court should be affirmed."
Under no stretch of the imagination, as I see it, could it be said that the decision here sought to be reviewed constitutes an irreconcilable conflict with the Mercury Cab case and surely the argument could not be sustained that, had the two decisions been rendered by the same court, the latter would have overruled the former.
Moreover, assuming for the sale of argument that we do have jurisdiction, there is nothing in the ordinance of the City of Orlando which requires the petitioners to secure a permit to carry on business within the City of Orlando. I can perceive no basic difference in the parking meter ordinances and the one here under consideration for both clearly relate to the control of traffic upon the streets of the city and both in their final analysis are purely regulatory measures and in no wise partake of taxation in any form. The petitioners may carry on their business over the public streets of the city and unload their products at any lawful location. If they desire to avail themselves of the privilege of using these designated unloading zones, they must obtain a permit to do so but obtaining such permit, I reiterate, is not a condition precedent to carrying on the business of the petitioners in the city.
The subject statute prohibits the imposition of "taxes and fees of every kind, character and description, * * * including excise and license taxes levied or imposed against such auto transportation companies, or the operation of such business and facilities, thereof, or their property * * *." No taxes or fees are levied or imposed by the ordinance. Nothing in the ordinance coerces the petitioner to comply with its terms in order to do business within the city. It merely provides an additional service to the petitioners if they care to avail themselves of that privilege and find it convenient to do so upon the payment of what is obviously a reasonable fee for such additional privilege. The ordinance is violative neither of the letter nor the spirit of the statute. It is obviously designed to promote the general welfare of the municipality and enable it to deal effectively with what is perhaps the most vexing and challenging of all municipal problems, the traffic upon its streets. The ordinance inures to the benefit of these petitioners as well as to the public. In my judgment, it is a valid regulation consistent with the letter and the spirit of the questioned statute and assuredly in the interest not only of the general welfare but of these petitioners.
I think the petition for writ of certiorari should be discharged as having been improvidently issued.
O'CONNELL, J., concurs.
NOTES
[1] Florida Power & Light Co. v. Bell, Fla. 1959, 113 So.2d 697.
[2] Ansin v. Thurston, Fla. 1958, 101 So.2d 808.
[3] Fla. 1955, 77 So.2d 837.