129 So.2d 696 (1961)
CITY OF MIAMI BEACH, a Florida municipal corporation; D. Lee Powell, Mayor; Marcie Liberman, Bernard Frank, Melvin Richard, Kenneth Oka, Harold Spaet, Wolfie Cohen, as Councilmen of the City of Miami Beach; and R. Wm. L. Johnson, City Clerk, Appellants,
v.
STATE ex rel. PICKIN' CHICKEN OF LINCOLN ROAD, INC., a Florida corporation, Appellee.
No. 60-470.
District Court of Appeal of Florida. Third District.
May 11, 1961.
Ben Shepard and Joseph A. Wanick, City Attys., Miami Beach, for appellants.
Ungerleider & Winton, Miami Beach, for appellee.
CARROLL, CHAS., Judge.
This is an appeal by the City of Miami Beach and its governing officials from an adverse judgment granting a peremptory writ of mandamus. The object of the proceeding *697 and the command of the writ were to require the city to issue a liquor license or permit to the relator "to sell alcoholic beverages for on-the-premises service bar consumption" in the relator's restaurant, located at the corner of Lincoln Road and Collins Avenue.
The city had the power to grant or withhold special liquor licenses or permits in restaurants, beyond its population quota limitations. Section 561.20(4), Fla. Stat., F.S.A. See Davidson v. City of Coral Gables, Fla.App. 1960, 119 So.2d 704, 707-708. The city had made provision for such licenses for restaurants meeting certain requirements,[1] but refused the requested license because relator's restaurant was in a district zoned "D" in which provision was made for liquor licenses only in chartered clubs and in hotels of certain capacity.[2]
At the outset we are confronted with a question of jurisdiction. The appellee contends the order appealed from was not final and appealable. Following answer by respondents, the relator moved for summary judgment and also moved for peremptory writ of mandamus notwithstanding the return. The trial court first entered a peremptory writ, then on noting the lack of finality thereof, entered the final order from which the appeal was taken.
*698 The requirement that in mandamus, as well as in other actions at law, there must be a final judgment for appeal (Carter v. Warnock, 57 Fla. 49, 49 So. 186; State ex rel. Rhodes v. Goodson, 65 Fla. 475, 62 So. 481; State ex rel. Ware v. City of Miami, Fla.App. 1958, 107 So.2d 385) was met by the entry of the judgment awarding or granting to the relator the peremptory writ of mandamus. See State ex rel. Burr v. Seaboard Air Line R. Co., 92 Fla. 61, 109 So. 656, 664; State ex rel. Davis v. Atlantic Coast Line R. Co., 97 Fla. 816, 122 So. 256, 257; State ex rel. Hawkins v. Board of Control of Florida, Fla. 1950, 47 So.2d 608, 611, holding that a motion for peremptory writ of mandamus notwithstanding the return contemplates a final order either quashing or dismissing the alternative writ or granting the peremptory writ. The final order here conformed to the procedure for the entry of such final judgments in mandamus, as outlined by Justice Davis in the case of City of Bradenton v. State ex rel. Perry, 118 Fla. 838, 160 So. 506, 508, 100 A.L.R. 400:
"On the completion of the hearing of an application for a peremptory writ of mandamus the usual procedure is for the court to enter its formal judgment awarding or denying the peremptory writ. Such final judgment is usually separate and distinct from the peremptory writ itself, because the peremptory writ is supposed to issue as a consequence of the judgment awarding it. Such peremptory writ of mandamus must conform strictly to the alternative writ, and between the two there must be no variation. City of Bradenton v. State ex rel. Oliver, [117 Fla. 578] 158 So. 165. See, also, Dane v. Derby, 54 Me. 95, 89 Am.Dec. 722; State ex rel. Dox v. Board of Equalization of Johnson County, 10 Iowa 157, 74 Am.Dec. 381."
The alternative writ, by incorporating the petition, alleged ownership and operation of the restaurant with seating capacity for more than 480 persons and floor space of more than 4,800 square feet.[3] The alternative writ alleged the refusal of the city to grant its requested license because the location was within the "D" district, and that hotels enjoyed special liquor licenses in the "D" district, and further alleged as follows:
"VI. Your Petitioner represents that it is entitled to a special license for the sale of alcoholic beverages for on the premises consumption to its patrons in accordance with Florida Statutes Annotated 561.20(2) and it has complied with all the requirements thereof. Florida Statutes Annotated 561.20(2) as follows:
"`No such limitation of the number of licenses as herein provided shall prohibit the issuance of a special license at any hotel, motel, or motor court of not less than fifty (50) guest rooms or to any restaurant containing all necessary equipment and supplies for and serving full course meals regularly and having accommodations at all times for service of two hundred (200) or more patrons at tables and occupying more than four (4,000) thousand square feet of space; * * *".
"Your Petitioner further represents that Ordinance No. 402, Section Six, Amended Ordinance No. 614 is not applicable to this Petitioner in that the same is arbitrary, capricious and unreasonable in that it attempts to create a classification of a `D' District prohibiting a regular restaurant from serving alcoholic beverages for on premises consumption yet at the same time allowing a hotel of a hundred rooms or more to serve alcoholic beverages *699 for on the premises consumption and furthermore such ordinance is arbitrary, capricious and unreasonable and an unconstitutional exercise of the police powers by the Council of the City of Miami Beach and is highly discriminating against the Petitioner. Furthermore said ordinance is unconstitutional in so far as it is in conflict with Florida Statutes Annotated 561.20 (2).
"VII. Your Petitioner further represents that Chapter Fifteen, Article I of `The Code of the City of Miami Beach, Florida 1950' Section 15.7 is arbitrary, capricious, unreasonable and unconstitutional in that the same is an unreasonable exercise of the police power by the Council of the City of Miami Beach and is discriminatory against your Petitioner and imposes requirements that in no way reasonably promote the public health, welfare, safety or morals of the citizens of Miami Beach and furthermore is in direct conflict with Florida Statutes Annotated 561.20(2)."
The respondents' motion to quash the alternative writ was denied. Their answer admitted the allegations relating to the ownership of the restaurant and its capacity for 480 patrons and area of 4,800 square feet and admitted that the license was refused as alleged, because the restaurant was located in the "D" district in which there was no provision made by the city for a special restaurant license. The answer denied the allegations of the alternative writ quoted above as paragraphs VI and VII thereof. A motion by relator for summary judgment was supported by an affidavit of the secretary of the relator corporation who also was manager of the restaurant.[4] Following the hearing on that motion and on the accompanying motion for peremptory writ notwithstanding the return, the court entered the orders referred to above, including the one from which this appeal has been taken. No reasons or grounds were stated by the court as the basis for the order or judgment entered.
The several contentions made by the relator in support of its charge that the city was under a duty to issue the requested liquor license were without support under the law. First, the relator contended that the special liquor license as provided for by the State Beverage Law took priority over the city's code and ordinance which provided, in effect, that such special licenses for restaurants should not be applicable in an area of the city in which relator's restaurant was located; and relator argued that the city's ordinance, which excluded the special restaurant liquor license in "D Districts," was unconstitutional as being in conflict with the state law creating such special licenses. Those contentions of the relator were without merit. This is so because the State Beverage Law provides that its restrictions as to population and its exceptions to population quotas, such as the created special licenses for hotels or restaurants, shall not prevail over contrary provisions relating thereto in municipalities. This was expressly provided for in § 561.20 (4), Fla. Stat., F.S.A., which reads:
"The limitations herein prescribed shall not affect or repeal any existing or future local or special act relating to the limitation by population and exceptions or exemptions from such limitation by population of such licenses within any incorporated city or town or *700 county that may be in conflict herewith."
As was pointed out by this court in Davidson v. City of Coral Gables, Fla.App. 1960, 119 So.2d 704, supra, the holding in the earlier case of Abood v. City of Jacksonville, Fla. 1955, 80 So.2d 443, that the provision of the State Beverage Law for a special license in restaurants should prevail over a contrary regulation within the City of Jacksonville, was no longer applicable because of the subsequent amendment to the beverage law, now appearing as subsection 4 of § 561.20, Fla. Stat., F.S.A. At the time the Abood case was decided, subsection 4 of § 561.20 of the Beverage Law provided the limitations of the state law would not affect or repeal any conflicting local or special act "relating to the limitation by population * * * of such licenses within any incorporated city." Effective January 1, 1958, subsection 4 of § 561.20 was amended to read that it would not affect or repeal such conflicting local provisions of incorporated cities which related not only to the limitations by population but to "exceptions or exemptions from such limitation by population of such licenses within any incorporated city." By virtue of that change in 1958 in subsection 4 of § 561.20, it was held in the Davidson case that the exception to population limitation created by the State Beverage Law which provided for special liquor licenses for restaurants meeting certain stated requirements could not be used as a basis for forcing the City of Coral Gables to issue such a license to a restaurant applicant, when the city had made provision for special licenses for hotels but had not provided for such special licenses for restaurants. Therefore, in the instant case, the relator's reliance on the restaurant exception in the State Beverage Law as the basis for its demand for the liquor license was misplaced.
Also, as grounds for seeking the writ, the relator contended that the provisions of the code and ordinance of the city were "arbitrary, capricious, and unreasonable and an unconstitutional exercise of the police powers." The only factual support for this was the allegation that special licenses were allowed in the "D" district to clubs and hotels, with the contention that because authority was provided in the area in question for such special liquor licenses for clubs and hotels, the city must also authorize such licenses for restaurants. That contention was not well founded. The contrary was held in Gross v. City of Miami, Fla. 1953, 62 So.2d 418. According to that case, under the power to regulate the sale of liquor as to "location," municipalities may permit one or more types of sale in a designated area without being required to permit all or other modes of sale therein. The decree affirmed by the Supreme Court in the Gross case held that a city could not be required to allow bar sales of liquor in an area which it had restricted to liquor package stores. See also City of Miami Beach v. State ex rel. Patrician Hotel Co., 145 Fla. 716, 200 So. 213.
The challenged legislation was within the scope of the city's granted powers, which included that of designating the location or places within the city where liquor could be sold. The State Beverage Law enumerated and limited the area of municipal regulation of the sale of liquor.[5] Commenting on this provision of the statute, in the case of Simpson v. Goldworm, Fla. 1951, 59 So.2d 511, 512, the Supreme Court said:
"* * * And the Act also expressly reserves to the municipalities the right *701 `to enact ordinances regulating the hours of business and location of places of business, and prescribing sanitary regulations therefor,' of any licensee under the Act. Section 562.45, Florida Statutes 1949 F.S.A. * * *"
This matter was amplified in Ellis v. City of Winter Haven, Fla. 1952, 60 So.2d 620, 622, where the Supreme Court said:
"Chapter 20202 was not a new grant of power to the City insofar as the power to designate areas within the city where alcoholic beverages could not be sold is concerned. The State Beverage Act of 1935 expressly authorized the cities of this state to `establish zoning ordinances restricting the location wherein such [liquor] licensees may be permitted to conduct such place of business'. Section 561.44, Florida Statutes, F.S.A. This same Act expressly reserved to the cities their power to regulate the hours of business and location of places of business and to prescribe sanitary regulations for liquor establishments, as theretofore exercised by the cities under the authority of Chapter 3163, Laws of Florida, Acts of 1879, now appearing as Sections 168.07, 562.45, Florida Statutes, F.S.A. By these two sections of the State Beverage Act, `it was intended to give the cities the power to designate places within their limits where intoxicating liquors might be sold and to regulate the dispensation thereof.' State ex rel. First Presbyterian Church of Miami v. Fuller, 136 Fla. 788, 187 So. 148, 150."
See also Singer v. Scarborough, 155 Fla. 357, 20 So.2d 126; City of Miami v. Kichinko, 156 Fla. 128, 22 So.2d 627; State ex rel. Dixie Inn v. City of Miami, 156 Fla. 784, 24 So.2d 705, 163 A.L.R. 577; State ex rel. Anthony Distributors v. Pickett, Fla. 1952, 59 So.2d 856.
The unsupported claim of unreasonableness, arbitrariness and abuse of police power, directed at a city's code and ordinance which were not patently invalid, made in regulation of sale of intoxicating liquors, within the range and limits allowed cities for regulation thereof, did not justify a judgment for peremptory writ of mandamus compelling city action in contravention of such regulation. Applicable here is what was said in this connection by the Supreme Court in the case of City of Miami v. Kayfetz, Fla. 1957, 92 So.2d 798, 801:
"Further, the courts should be very cautious in declaring a municipal ordinance unreasonable, there being a peculiar propriety in permitting the inhabitants of a City through its proper officials to determine what rules are necessary for their own local government. State ex rel. Harkow v. McCarthy, 1936, 126 Fla. 433, 171 So. 314; City of Tacoma v. Keisel, 1912, 68 Wash. 685, 124 P. 137, 40 L.R.A., N.S., 757.
"Where an ordinance is within the power of the municipality to enact it is presumed to be reasonable, unless its unreasonable character appears on its face. State ex rel. Harkow v. McCarthy, supra; State ex rel. McAuley v. York, 1925, 90 Fla. 625, 106 So. 418. And when the authority to enact the ordinance does fairly appear, wide latitude is allowed in its exercise, where it does not appear that there has been, in action taken, an abuse of authority or a violation of organic or fundamental rights. State ex rel. Simpson v. Ackerly, 1915, 69 Fla. 23, 67 So. 232. If reasonable argument exists on the question of whether an ordinance is arbitrary or unreasonable, the legislative will must prevail. State ex rel. Skillman v. City of Miami, 1931, 101 Fla. 585, 134 So. 541
"There can be no question that the City of Miami, under its police power, has the right to enact reasonable regulations concerning the sale of alcoholic beverages, as well as other acts in the conduct of such business which do not *702 directly pertain to the sale thereof. Sec. 168.07, F.S., F.S.A. City of Miami Beach v. State ex rel. Patrician Hotel Co., 1941, 145 Fla. 716, 200 So. 213."
The question of whether it is arbitrary and unreasonable and a denial of equal protection of the laws for the city to allow special liquor licenses, as exceptions to the population limitations, to defined restaurants in some parts of the city, and to deny special liquor licenses to such restaurants in another part of the city (such as in this "D" zoning district), was not pleaded or presented in argument and is not answered by this case.
It is the opinion of this court that the judgment in mandamus should be and it hereby is reversed, and the cause is remanded with directions to the trial court to enter an order quashing the alternative writ of mandamus.
Reversed and remanded.
HORTON, C.J., and SMITH, D.R., Associate Judge, concur.
NOTES
[1] The code of the City of Miami Beach, Ch. 15, Art. 1, § 15.7 was as follows:

"Except in hotels containing fifty or more guest rooms, or in bona fide restaurants as defined in section 15.1 of this Code, no license shall be issued to a retail vendor to sell beverages containing alcohol of more than one per cent by weight, and not more than fourteen per cent by weight, and wines, regardless of alcoholic content, as provided in subsection (j) of section 15.8 of this Code in any place of business located within three hundred feet in an air line measured from main entrance to main entrance from any place of business in which there is already a retail vendor licensed under subsection (j) of section 15.8 of this Code, nor shall such license be issued during the period in which a license for a place of business within such distance is renewable as a matter of course as provided in section 15.1 of this Code.
"No license shall be issued for the sale of intoxicating beverages within the corporate limits of the city by vendors operating places of business where beverages containing alcohol of more than fourteen per centum by weight are sold, as provided for in subsection (g) and subsection (h) of section 15.8 of this Code, in excess of one license for each one thousand five hundred persons in the city according to the last preceding federal census.
"Nothing contained herein shall prohibit the issuance of licenses for the sale of intoxicating liquors containing alcohol of more than fourteen per centum by weight, in hotels having one hundred or more guest rooms, where the exterior of the hotel in which the business is carried on shall not contain a store front in connection with such business, and where the business so licensed shall only be entered from within the building; in or on steamships, busses or airplanes where properly licensed and authorized to operate by state authority; from service bars as hereinbefore defined, in restaurants with a seating capacity for four hundred eighty or more patrons and in which the roofedin floor area provided for dining tables and chairs in the room or portion of the restaurant wherein food is served to guests is not less than four thousand eight hundred square feet, and no license issued for the sale of intoxicating liquors containing alcohol of more than fourteen per centum by weight in any of the places mentioned in this paragraph shall be counted or considered in computing the number of licenses permissible on the basis of population as hereinabove set forth." [Italics supplied.]
[2] Ordinance 614, amending ordinance 402, provided:

"In `D' District, the sale of liquor is prohibited except in `Clubs' as defined herein, and in hotels having one hundred (100) or more sleeping rooms, provided that each of said hotel sleeping rooms shall meet the requirements of Section 5.18.06.01 of Ordinance No. 592, same being the Building Code of the City of Miami Beach; and provided that the exterior of the hotel in which the business is carried on shall not contain a store front in connection with said business and the business so licensed shall only be entered from within the building."
[3] It should be noted that while the special restaurant licenses provided for by the city code specified 480 capacity and 4,800 square feet, the State Beverage Law's provision for the restaurant exception or special license § 561.20(2) specified only 200 capacity and 4,000 square feet.
[4] The affidavit gave the capacity of the restaurant as "200 or more patrons at tables and occupies more than 4,000 square feet of space," which it will be noted was the minimum required under the state statute but not as much as was required under the city code. Additionally, the affidavit showed relator claimed a right to the special restaurant liquor license under the exception as provided for in the State Beverage Law rather than as provided for in the city code, by stating: "That said restaurant complies with all of the terms and conditions of Florida Statutes Annotated 561.20 (2)."
[5] § 562.45, Fla. Stat., F.S.A., includes the following:

"Nothing in the beverage law contained shall be construed to affect or impair the power or right of any incorporated municipality of the state hereafter to enact ordinances regulating the hours of business and location of place of business, and prescribing sanitary regulations therefor, of any licensee under the beverage law within the corporate limits of such municipality." [Italics supplied.]