104 So.2d 636 (1958)
DADE COUNTY, a political subdivision of the State of Florida, et al., Appellants, and
Richard W. Ervin, as Attorney General of the State of Florida; Richard E. Gerstein, As State Attorney for the Eleventh Judicial Circuit of Florida; Thomas Edward Walsh and The Young Republican Club of Miami; and Murray H. Dubbin, Intervening Appellants,
v.
YOUNG DEMOCRATIC CLUB OF DADE COUNTY and Gerard Pucci, Appellees, and
G.O.P. Campaign Committee of Dade County, Inc., and The Dade County Young Republican Club, Inc., Intervening Appellees.
Dade County, a political subdivision of the State of Florida, et al., Appellants, and
Richard W. Ervin, as Attorney General of the State of Florida; Richard E. Gerstein, As State Attorney of the Eleventh Judicial Circuit; Thomas Edward Walsh and The Young Republican Club of Miami, Intervening Appellants,
v.
The DEMOCRATIC PARTY OF DADE COUNTY, By and Through the Dade County Democratic Executive Committee, Appellees.
Supreme Court of Florida.
July 25, 1958.
Rehearing Denied September 8, 1958.
Darrey A. Davis, Miami, for Dade County, and its Board of County Com'rs, Supervisor of Registration and Clerk of the Board of County Com'rs, appellants.
Richard W. Ervin, Atty. Gen., Richard E. Gerstein, Miami, as State Atty. of the Eleventh Judicial Circuit of Florida, intervening appellants, pro se.
John C. Whitehouse, Miami, for Thomas Edward Walsh, Miami, and Young Republican Club of Miami, intervening appellant.
*637 Phillip Schiff, Miami, for Murray H. Dubbin, intervening appellant.
Johnson E. Davis, Miami, and Milton Mamber, Miami Beach, for Democratic Party of Dade County, by and through the Dade County Democratic Executive Committee.
Ronald M. Eefting and A. Dan Killian, Jr., Miami, for Young Democratic Club of Dade County, and Gerard Pucci, appellees.
Albert E. Schrader, Jr., Coral Gables, for G.O.P. Campaign Committee of Dade County, Inc., and Dade County Young Republican Club, Inc., intervening appellees.
TERRELL, Chief Justice.
Appellees filed complaint for declaratory decree in the appropriate court challenging the constitutional validity of §§ 2.03 and 2.04, Home Rule Charter, hereinafter referred to as the Charter, which provide for the non-partisan election of county commissioners of Dade County. The answer of appellants concedes that the non-partisan provisions of the Charter are in conflict with the general election laws but they say that Section 11, Article VIII of the Florida Constitution, F.S.A., expressly authorizes the electors of Dade County to adopt a charter providing for a method of electing county commissioners in a manner different from that provided in the general election laws. The answer prayed for final decree adjudicating that all charter provisions relating to the election of county commissioners in Dade County were adopted in accordance with the authority granted by Section 11, Article VIII of the Constitution.
The Attorney General of Florida, the State Attorney of Dade County, Thomas Edward Walsh, The Young Republican Club of Miami and Murray H. Dubbin were permitted to intervene as parties defendant. They adopted the answer of Dade County. The G.O.P. Campaign Committee of Dade County, Inc., and the Dade County Republican Club, Inc., were permitted to intervene as parties plaintiff. They adopted the complaint of appellees. The cause was then consolidated with a similar suit brought by the Democratic Party of Dade County for the purpose of trial which was conducted on the issues made by the complaint and answer of Dade County, its Board of County Commissioners and Supervisor of Registration.
At the conclusion of the trial the Chancellor entered an identical final decree in both cases wherein he decreed §§ 2.03 and 2.04 of the Charter to be unconstitutional and permanently enjoined Dade County and its Board of County Commissioners and Supervisor of Registration from holding or conducting any non-partisan election of county commissioners and from enforcing or attempting to enforce any of the provisions of §§ 2.03 and 2.04 of the Charter. The final decree ordered all candidates for the office of county commissioner to comply with the general election laws governing the qualification and election of county officers. The final decree also decreed all other provisions of the Charter to be valid. Dade County, its Supervisor of Registration and its Board of County Commissioners have appealed from the final decree.
The point for determination is whether or not the Chancellor committed error in decreeing §§ 2.03 and 2.04 of the Charter to be unconstitutional and of no force and effect.
In addition to paragraphs 2.03 and 2.04 of the Charter, the answer to this question involves consideration of Section 11, Article VIII, Constitution of Florida, better known as Dade County Home Rule Amendment, which provides:
"(1) The electors of Dade County, Florida, are granted power to adopt, revise, and amend from time to time a *638 home rule charter of government for Dade County, Florida, under which the Board of County Commissioners of Dade County shall be the governing body. This charter:
"(a) Shall fix the boundaries of each county commission district, provide a method for changing them from time to time, and fix the number, terms and compensation of the commissioners, and their method of election."
Sections 2.03 and 2.04 of the Charter provide:
"Section 2.03 Non-Partisan Elections.

"All elections for the Board shall be non-partisan and no ballot shall show the party designation of any candidate. No candidate for the office of County Commissioner shall be required to pay any party assessment or state the party of which he is a member or the manner in which he voted or will vote in any election.
"Section 2.04 Qualifications and Filing Fee.

"All candidates for the office of County Commissioner shall qualify with the Clerk of the Circuit Court at least 30 days prior to the date of the election at which he is a candidate in the method provided by law or ordinance and shall pay a filing fee of $300. All filing fees shall be paid into the general funds of the county."
The Charter with said provision was adopted by the electors of Dade County May 21, 1957. It was considered by this court in Chase v. Cowart, Fla., 102 So.2d 147, 150, wherein, among other things, we said:
"When the Legislature enacted Chapter 31420, Laws of 1956, creating the metropolitan charter (board) and providing the method of presenting the home rule charter to the voters of Dade County, and more specifically when the electors of Dade County adopted the home rule charter on May 21, 1957, the authority of the Legislature in affairs of local government in Dade County ceased to exist. Thereafter, the Legislature may lawfully exercise this power only through passage of general acts applicable to Dade County and any other one or more counties, or a municipality in Dade County and any one or more municipalities in the State."
It follows that in the exercise of legislative power granted by the Charter, the electors of Dade County were prohibited from infringing on the supremacy of the Florida Constitution and the general laws of Florida "except as expressly authorized" by specific grants of power given them by Section 11, Article VIII of the Constitution, relating to home rule in local affairs for Dade County. The "specific grants" involved here are contained in paragraphs (1) and (a) above.
It is clear that under paragraph (a), above quoted, the electors of Dade County are authorized to fix the boundaries of each commissioner's district, to provide a method for changing the boundaries of such districts, fix the number, terms, and compensation of said commissioners and to provide a "method of election" of county commissioners.
Interpretation of the "method of election," detailed in § 2.03, quoted herein, precipitated this litigation. "Method" has to do with the way or means of doing a thing. It is often referred to as the mode, plan, design or manner in which a project is executed. Under such a definition, the people being given the power to determine the "method of election" of county commissioners, haven't they the power to require that the election of county commissioners *639 shall be non-partisan, that no ballot shall show the party designation of a candidate, that no candidate for county commissioner shall be required to pay any party assessment, to state the party of which he is a member or the manner in which he voted in the past or will vote in the future? Unquestionably the scope given the words, "method of election," concludes the question with which we are confronted.
The Chancellor held that the non-partisan provisions of the Charter, §§ 2.03 and 2.04, were invalid and unconstitutional and enjoined the holding of any election under them. His holding was apparently based on the theory that such provisions were in conflict with the general election laws. In so holding, we think the Chancellor was in error.
When the electors of the state approved the Home Rule Amendment for Dade County, the electors of the county were expressly authorized to determine the "method of election" of county commissioners. Pursuant to such authorization, they adopted the non-partisan plan and we think they had ample power to do so. Chase v. Cowart, supra, and Gray v. Golden, Fla., 89 So.2d 785, amply support such power. In Chase v. Cowart we emphasized that subsection (5) of Section 11, Article VIII of the Constitution provides that the Charter "shall not conflict with any provision of this Constitution nor of [with] any applicable general laws now applying to Dade County and any other one or more counties of the State of Florida except as expressly authorized in this section * * *." In so holding we said that the preceding underscored words related to those powers which were specifically granted to the electors of Dade County by the various subsections of subsection (1), Section 11, Article VIII of the Constitution. This leaves no doubt as to the conclusion we reach because subsection 1(a) supra is an express grant of power to provide for the method of electing county commissioners and falls squarely within the exception to the mandate contained in subsection (5) supra that the Charter shall not conflict with general law.
The non-partisan election of officers is a question of policy involving no constitutional determination. The electors of Dade County determined that county commissioners should be elected on a non-partisan ballot. We think their determination was final and that the courts have no right to interfere with it. It was in harmony with the whole theory of the Charter, being an experiment in representative government. It was even more appropriate in a cosmopolitan community like Dade County inhabited by people from everywhere whose political, social and economic creeds are as incoherent.
Non-partisan balloting is not new in this country. It has been many times employed in the election of judicial and other officers and has been upheld. See Annotation, 125 A.L.R. 1044. It clothes the people with a liberty of expression that is inherent and that they will exercise any way as suits their will and desire when the circumstances prompt them to do so. No one but God will ever know how many registered Democrats crossed the line and voted for our present President in the last two presidential elections. Court decrees nor legislative acts can inhibit such departures from the norm and no one who did so considered that he perjured himself or that he exercised other than a right to vote as he pleased.
Another reason fortifies this conclusion. The question of administering government in a great municipal area like Miami and Dade County is by no means entirely political. It is fraught with business as well as political aspects. Many technical, social and other considerations enter the picture. If the people of that area are convinced that they can secure better and more capable administrators, through the medium of a non-partisan ballot, what right has this or any other court to deny *640 them that privilege? Their Charter provides for it and as heretofore pointed out, the many and diverse political and social strains in the community suggested the non-partisan ballot as the best means to secure an unbiased expression.
Aside from what has been said, there is yet a stronger reason for upholding the non-partisan ballot. It was the people's device for naming their governing officers  the county commissioners. In a democracy like ours, the people are the source of all law. Executives, legislators and judges exist because it is impractical for the people to perform the functions they are clothed with. Every official act they perform is delegated to them by the people. The people can cut the grass from under their feet at will. It is true that devious, but not impossible, means have been provided for doing this, but after all is said, we are the people's agents to administer government by the rules they prescribe. Nothing in the Constitution prohibits qualifying candidates for office in Dade County under different rule from that under which they qualify in other counties. We have repeatedly recognized such differences in classification and in this case they were made by the people. In view of this reasoning, it does seem to me that it would be the quintessence of impudence for this court to strike down the provisions of the Charter in question.
It is accordingly our view that the Charter expressly authorized the electors of Dade County to select their county commissioners by non-partisan ballot; that the portion of the final decree declaring the non-partisan ballot invalid is reversed and that said provisions, §§ 2.03 and 2.04, are declared to be valid but that in all other respects the final decree is affirmed.
Affirmed in part, reversed in part.
THOMAS, HOBSON, THORNAL and O'CONNELL, JJ., concur.