BOYD, Justice.
Dade County has petitioned the court for a writ of mandamus, to be directed to specified officials of the state,[1] requiring them to perform the acts necessary to effect payment to the county of a municipal share of the revenue derived from collection of beverage license taxes in the unincorporated areas of the county. The petition invokes our jurisdiction under article V, section 3(b)(5) Florida Constitution, pursuant to Florida Appellate Rule 4.5 b.
Section 561.342, Florida Statutes (1975),[2] provides that counties are to receive twen *443 ty-four percent of the revenue from beverage license taxes imposed within their borders. “Incorporated municipalities” are to receive thirty-eight percent of the revenue collected within their corporate limits. Dade County, like other counties, is receiving the twenty-four percent share provided for counties. It contends that it also has a right to receive thirty-eight percent of the revenue raised in its unincorporated areas on the theory that the government of Dade County constitutes a “municipal” government for the unincorporated areas of the county.
Article VIII, section 11 of the Constitution of 1885 authorized the creation of a metropolitan government for Dade County and granted to the electors of Dade County the power to adopt a home rule charter of local government. Subsection (l)(b) of section 11 provided that the charter to be adopted:
May grant full power and authority to the Board of County Commissioners of Dade County ... to levy and collect such taxes as may be authorized by general law and no other taxes, and to do everything necessary to carry on a central metropolitan government in Dade County.
Pursuant to the authority thus conferred, the voters of Dade County adopted a home rule charter for the metropolitan government of the county. Article VIII, section 6(e) of the Florida Constitution of 1968, provides that section 11 of the 1885 Constitution is to remain in full force and effect and provides further:
All provisions of the Metropolitan Dade County Home Rule Charter, heretofore or hereafter adopted by the electors of Dade County pursuant to Article VIII, Section 11, of the Constitution of 1885, as amended, shall be valid, and any amendments to such charter shall be valid; provided that the said provisions of such charter and the said amendments thereto are authorized under said Article VIII, Section 11, of the Constitution of 1885, as amended.
Article VIII, section 6(f), Florida Constitution (1968), provides:
To the extent not inconsistent with the powers of existing municipalities or general law, the Metropolitan Government of Dade County may exercise all the powers conferred now or hereafter by general law upon municipalities.
Thus the authorizing amendment to the former constitution has been incorporated by reference into the new constitution; the charter itself has been given constitutional approval, to the extent that its provisions are authorized by the authorizing amendment; and the county has been declared to have the same powers as conferred upon municipalities by general law.
The obvious purpose of Article VIII, section 6(f) of the 1968 Constitution was to lay to rest the question of whether the taxing power of Dade County should be the same as any other county. In State ex rel Dade County v. Brautigam, 224 So.2d 688 (Fla.1969), this court held that Dade County was entitled to receive from the state treasury amounts collected pursuant to the county’s exercise of a taxing power conferred upon municipalities by general law. We said that in view of the fact that the county was performing municipal services in its unincorporated areas, the purpose of section 6(f) was to assure that these services could be adequately financed. See also Belcher Oil Co. v. Dade County, 271 So.2d 118 (Fla.1972); Bearden v. Metropolitan Dade County, 258 So.2d 344 (Fla. 3d DCA), cert. denied, 263 So.2d 234 (Fla.1972).
The respondents contend that the issue of Dade County’s right to distribution of the revenue is governed not by the county’s powers, which are in many ways equivalent to those of a municipality, but rather by its status. Under section 561.342, the thirty-eight percent share is granted to “incorporated municipalities.” By its very nature, respondents argue, the unincorporated area of Dade County is not an incorporated municipality.
Under Dade County’s two tiered plan of local government, a number of mu *444 nicipalities co-exist with the county-wide, chartered metropolitan government. The areas lying outside the boundaries of these municipalities have been referred to as “unincorporated.” But these areas are also “incorporated” by virtue of the home rule charter. The Dade County government is “the municipal government of the unincorporated areas.” Belcher Oil Co. v. Dade County, 271 So.2d 118, 120 (Fla.1972). We hold that, with regard to the so called unincorporated areas of Dade County, the metropolitan government is an “incorporated municipality” for the purposes of section 561.342.
The petition seeks payment of the municipal share of the tax imposed for licenses issued beginning in 1973. Because of the disruption of state finances that would be caused by granting in full the requested relief, we decline to give retrospective effect to today’s decision. The relief sought will be granted prospectively from the time of relator’s petition.
Respondents director of the Division of Alcoholic Beverages and Tobacco and secretary of the Department of Business Regulation are commanded to certify to the State Comptroller the amounts due Dade County as its municipal share of the alcoholic beverage license taxes imposed in the unincorporated areas of the county for the 1977-1978 fiscal year and for each successive fiscal year. The respondent comptroller is commanded to pay the amounts so certified to Dade County.
It is so ordered.
ENGLAND, C. J., and ADKINS, HATCHETT and ALDERMAN, JJ., concur.

. The respondents are the director of the Division of Alcoholic Beverages and Tobacco, the secretary of the Department of Business Regulation, and the Comptroller of the State of Florida.

. 561.342 County and municipal license tax; caterers, clubs, manufacturers, distributors, exporters, and vendors.
(1)Twenty-four percent of the taxes imposed under §§ 563.02, 564.02, 565.02(1), (4), and (5), and 565.03 collected within the county shall be returned to the appropriate county tax collector.
(2) Thirty-eight percent of the license taxes imposed under §§ 563.02, 564.02, 565.02(1), (4), and (5), and 565.03 collected within an incorporated municipality shall be returned to the appropriate municipal officer.
(3) No tax on the manufacture, distribution, exportation, transportation, importation, or sale of such beverages shall be imposed by way of license, excise, or otherwise by any municipality, anything in any municipal charter or special or general law to the contrary notwithstanding.