386 So.2d 556 (1980)
BOARD OF COUNTY COMMISSIONERS OF DADE COUNTY, Florida, Petitioner,
v.
Harry L. WILSON, Respondent.
No. 59115.
Supreme Court of Florida.
July 25, 1980.
*557 Robert A. Ginsburg, Dade County Atty., Miami, for petitioner.
Dennis M. O'Connor, Coral Gables, and Eugene M. Short, Jr., of Peters, Short, Maxey & Morgan, Coral Gables, for respondent.
*558 SUNDBERG, Chief Justice.
Section 7.01 of the Dade County Home Rule Charter provides that any county elector may seek the passage of an ordinance by means of initiative and referendum. An elector attempting to invoke the charter provision must submit his proposed ordinance to the Board of County Commissioners (the Board) in the form of a petition. Approval by the Board of the petition's form is a prerequisite to the circulation of the petition for a specified number of signatures. If sufficient signatures are obtained, the Board must either adopt the petition or submit the matter to the electorate for a referendum.
Pursuant to the dictates of this charter provision, Harry L. Wilson requested that the Board "approve as to form" his initiative petition designed to set county millage for the 1980-81 fiscal year at four mills.[1] The Board disapproved the form of Mr. Wilson's petition, finding that the ordinance proposed in the petition was violative of the Florida Constitution.[2] Mr. Wilson applied to the circuit court for a writ of mandamus and, finding that the proposed ordinance was not facially unconstitutional, the court issued the writ. Pursuant to this judicial action, which has not been stayed, the petition has been circulated, the requisite number of signatures obtained and a referendum election scheduled for September 9, 1980.
On appeal, the District Court of Appeal, Third District, determined that the proposed ordinance was not unconstitutional on its face and affirmed the trial court but, recognizing the issue as a persistent one, certified its decision to us as passing upon a question of great public importance. Board of County Commissioners v. Wilson, 382 So.2d 431 (Fla.3d DCA 1980). We have jurisdiction. Art. V, § 3(b)(4) Fla. Const. (1980).
The question certified by the district court is as follows:
Whether the courts may pass upon the validity of an ordinance, fixing the millage rate of the county's operating budget, prior to its adoption by the voters through the initiative and referendum process.
Mr. Wilson argues that this issue was raised in Wilson v. Dade County (Wilson I), 369 So.2d 1002 (Fla.3d DCA 1979), cert. denied, 373 So.2d 457 (Fla. 1979), wherein the validity of a similar proposed ordinance was challenged by the Board. The district court's decision in Wilson I, Mr. Wilson asserts, is dispositive of the present proceeding. We disagree. Courts may consider the constitutional validity of proposed ordinances.[3] While recognizing this authority, the district court specifically stated that only the statutory validity of the ordinance was at issue. Courts may not rule upon the validity of a proposed ordinance challenged solely on nonconstitutional grounds. Since the Board is here challenging the constitutionality of Wilson's proposed ordinance, we have the authority to inquire further into the validity of the ordinance.
*559 In the present proceeding, the district court concluded that article VII, section 1(a), Florida Constitution, does not pose a constitutional impediment to a proposed ordinance designed to establish the millage rate for county taxation. We agree that the constitutional provision does not, in itself, prescribe the method and means by which taxes are to be imposed.[4] As a consequence, where there is no legislative directive relating to a specific method or means of taxation, that procedure may be controlled by ordinance.
We find it unnecessary to decide whether an ordinance which is in direct conflict with a legislatively prescribed method of taxation would violate article VII, section 1(a). Rather, we turn our attention to the requirements of article VIII, section 6 of the 1968 Constitution relating to Dade County home rule. Article VIII, section 11 of the Constitution of 1885 authorized the creation of a metropolitan government for Dade County and granted to the electors of that county the power to adopt a home rule charter. Pursuant to this authority, the voters of Dade County adopted a home rule charter for the metropolitan government of the county. Article VIII, section 6(e) of the 1968 Constitution provides that article VIII, section 11 of the 1885 Constitution is to remain in full force and effect, and that:
All provisions of the Metropolitan Dade County Home Rule Charter, heretofore or hereafter adopted by the electors of Dade County pursuant to Article VIII, Section 11, of the Constitution of 1885, as amended, shall be valid, and any amendments to such charter shall be valid; provided that the said provisions of such charter and the said amendments thereto are authorized under said Article VIII, Section 11, of the Constitution of 1885, as amended.

(Emphasis supplied, footnotes omitted.) Hence the authorizing amendment of the former constitution has been incorporated by reference into the 1968 Constitution. The Dade County Charter has been given constitutional approval, but only to the extent that it is consistent with the former article VIII, section 11 (now in article VIII, section 6). If any provision of the Dade County Charter, or any action taken pursuant to the Charter, contravenes the limitations or prescriptions of article VIII, section 6 of the 1968 Constitution, it is necessarily unconstitutional and void. See State ex rel. Dade County v. Nuzum, 372 So.2d 441 (Fla. 1979); Gray v. Golden, 89 So.2d 785 (Fla. 1956).
The focus thus narrows to whether the proposed ordinance is authorized by the enabling constitutional language.[5] Article VIII, section 11(1)(b) of the 1885 Constitution states that the charter "[m]ay grant full power and authority to the Board of County Commissioners of Dade County ... to levy and collect such taxes as may be authorized by general law and no other taxes... ." The authority granted under the enabling section is circumscribed by subsections (5) and (6) of section 11:
(5) [T]he home rule charter provided for herein shall not conflict with any provision of this Constitution nor of any applicable general laws now applying to Dade County and any other one or more counties of the State of Florida except as expressly authorized in this section nor shall any ordinance enacted in pursuance to said home rule charter conflict with this Constitution or any such applicable general law except as expressly authorized herein... .
(6) Nothing in this section shall be construed to limit or restrict the power of the Legislature to enact general laws which shall relate to Dade County and any other one or more counties of the state of Florida or to any municipality in Dade County and any other one or more *560 municipalities of the State of Florida relating to county or municipal affairs and all such general laws shall apply to Dade County and to all municipalities therein to the same extent as if this section had not been adopted and such general laws shall supersede any part or portion of the home rule charter provided for herein in conflict therewith and shall supersede any provision of any ordinance enacted pursuant to said charter and in conflict therewith, and shall supersede any provision of any charter of any municipality in Dade County in conflict therewith.
Moreover, in subsection (9) of section 11 it is declared to be the intent of the legislature and the electors of Florida that
the provisions of this Constitution and general laws which shall relate to Dade County ... shall be the supreme law in Dade County, Florida, except as expressly provided herein and this section shall be strictly construed to maintain such supremacy of this Constitution and of the Legislature in the enactment of general laws pursuant to this Constitution.
Clearly then, the provisions of the Home Rule Charter and the ordinances adopted pursuant thereto must be in accordance with general law unless there is express constitutional authorization otherwise.
Despite the above-quoted constitutional provisions, Mr. Wilson contends that this Court's decision in Dade County v. Young Democratic Club, 104 So.2d 636 (Fla. 1958), requires that we find the present ordinance to be valid. In Young Democratic Club, however, this Court found that, even though in conflict with general election laws, Dade County charter provisions dealing with the method of electing county commissioners were specifically authorized by the Constitution.[6] Therefore, the charter provisions were constitutionally valid. There is, however, no similar constitutional authorization for the citizens or governing body of Dade County to devise its own method for levying taxes or establishing millage rates. As a consequence, the proposed ordinance at issue here will withstand constitutional scrutiny only if it does not conflict with general law. See Buckress Land Co. v. Metropolitan Dade County, 232 So.2d 384 (Fla. 1970); Gray v. Golden, supra.
Applying the preceding analysis, we conclude that the proposed ordinance is unconstitutional. An ordinance will be declared unconstitutional because in conflict with general law if the ordinance and the legislative provision cannot coexist. State ex rel. Dade County v. Brautigam, 224 So.2d 688 (Fla. 1969). Petitioner cites as conflicting a number of legislative provisions[7] which delineate the manner in which a county commission is to determine the appropriate millage rate for ad valorem taxation purposes. In particular, section 200.191(1)(a)-(c) authorizes three categories of countywide millage rates:
200.191 Millages; definitions. 
(1) County millages shall be composed of three categories of countywide millage rates, as follows:
(a) General county millage, which shall be that nonvoted millage rate set by the governing body of the county.
(b) County debt service millage, which shall be that millage rate necessary to raise taxes for debt service as authorized by a vote of the electors pursuant to s. 12, Art. VII of the State Constitution.
(c) County voted millage, which shall be that millage rate set by the governing body of the county as authorized by a vote of the electors pursuant to s. 9(b), Art. VII of the State Constitution.
The rates are to be set under subsections (a) and (c) by the governing body of the county, and under (b) by the vote of the electors pursuant to article VII, Section 12, Florida Constitution (1968). We read these subsections to comprise the exclusive manner by which to set countywide millage rates. The proposed ordinance, which would set the millage rate through the initiative petition process, is thus in direct conflict with section 200.191.
*561 Moreover, subsequent to the filing of this cause in the Supreme Court, petitioner brought to our attention a law passed by the 1980 session of the Florida Legislature which is in direct conflict with the present proposed ordinance. Section 27 of chapter 80-274, Laws of Florida, adding subsection (6) to 200.191, Florida Statutes, states:
(6) Millages shall be fixed only by resolution of the governing body of the taxing authority in the manner specifically provided by general law or by special act.
Section 64(1) of chapter 80-274 provides that the above section shall be effective for taxes levied for 1980 and each year thereafter, thus it applies to the proposed ordinance before us. And because the proposed ordinance, if approved by a majority of voters in the referendum election, would become law without the necessity of a resolution passed by the Dade County Commission, it flies directly in the face of general law as enunciated in section 27.
Respondent attempts to avoid the effect of section 27 by asserting first that section 27 is superseded by the Dade County Home Rule Charter, and second that the portion of the title of chapter 80-274 pertaining to the amendment of section 200.191, Florida Statutes, is constitutionally defective. His assertions are unpersuasive. As noted previously, subsection 6 of section 11, article VIII of the 1885 Constitution mandates that general laws enacted subsequent to the adoption of the Home Rule Charter "shall apply to Dade County and to all municipalities therein to the same extent as if this section had not been adopted and such general laws shall supersede any part or portion of the home rule charter provided for herein in conflict therewith and shall supersede any provision of any ordinance enacted pursuant to said charter and in conflict therewith ..." Hence, it is the general law which supersedes the Home Rule Charter. With regard to respondent's second argument, we believe that the portion of the title to chapter 80-274 with which we are here concerned[8] does not mislead a person of average intelligence as to the scope of the enactment and is sufficient to put that person on notice and cause him to inquire into the body of the statute itself. See Williams v. State, 370 So.2d 1143 (Fla. 1979) and cases cited therein.
Accordingly, the certified question is answered in the affirmative but the decision of the District Court of Appeal, Third District, is quashed. This cause is remanded to the district court with directions to remand to the trial court for entry of a judgment consistent with this opinion. Due to the exigent circumstances presented by the budgeting process of Dade County for the fiscal year 1980-81, no petition for rehearing will be entertained in this cause.
Respondent's petition for attorney's fees is denied.
It is so ordered.
ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.
NOTES
[1] The proposed ordinance provides:

Be it ordained by the people of Dade County, Florida:
Section 1. The county millage for the 1980-81 fiscal year shall be 4.00 mills on all property subject to ad valorem tax in Dade County, Florida, as the millage fixed and determined to be levied for all county operating purposes.
Section 2. This ordinance does not determine the millage for county bonded debt service, or the library district fund, or other special district millages.
Section 3. This ordinance shall be included in the Dade County Code.
Section 4. This ordinance shall take effect at the beginning of the fiscal year commencing on October 1, 1980.
[2] The district court made no ruling with respect to the proposition that the Board's rejection of the proposed ordinance was based on its substance (that is, its constitutionality) rather than on its form. In light of this fact, we wait for another day to confront the question whether under the Board's limited duty to scrutinize the form of an initiative petition proposal, it may consider the facial constitutionality of that proposal.
[3] See e.g., City of Miami Beach v. Frankel, 363 So.2d 555 (Fla. 1978); Dade County v. Dade County League of Municipalities, 104 So.2d 512 (Fla. 1958); Rivergate Restaurant Corp. v. Metropolitan Dade County, 369 So.2d 679 (Fla.3d DCA 1979).
[4] For examples of instances in which we have determined that the Florida Constitution does provide the exclusive manner of performing an act, see Sullivan v. Askew, 348 So.2d 312 (Fla. 1977), and Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253 (1927).
[5] We will accept, without deciding, the district court's conclusion that the proposed ordinance is authorized by the Dade County Charter. See § 7.01(6)(a), Home Rule Charter of Metropolitan Dade County.
[6] Art. VIII, § 11(1)(a), Fla. Const. (1885).
[7] §§ 129.01(1), 195.207, 200.011(1), 200.011(2), 200.191(1)(a) and (c), Fla. Stat. (1979); ch. 80-274 Laws of Fla.
[8] We caution that our holding above is limited to that part of the title dealing with "adding subsection (6) to s. 200.191, Florida Statutes; providing for fixing of millages." We express no opinion as to the validity of the remainder of the title, nor as to any substantive provision in the enactment.