Mr. George V. Beauchamp Levy County Attorney Board of County Commissioners Post Office Box 306 Bronson, Florida 32621
Dear Mr. Beauchamp:
This is in response to your request for an opinion on the following question:
 DOES s 205.064, FLORIDA STATUTES, PROHIBIT A MUNICIPALITY OR COUNTY FROM IMPOSING ANY RESTRICTIONS UPON A PERSON SELLING AGRICULTURAL PRODUCTS GROWN OR PRODUCED BY SAID PERSON IN THE STATE OF FLORIDA?
This opinion is expressly limited to the power and authority of a noncharter county to regulate matters pertaining to the sale of agricultural products grown or produced in the State of Florida; this office must, as a matter of long-standing policy, refuse to comment on the power of a municipality except at the request of the governing body of the municipality in question.
Section 205.064, F.S., provides:
 (1) No local occupational license shall be required of any natural person for the privilege of engaging in the selling of farm, grove, horticultural, floricultural, tropical piscicultural, or tropical fish farm products, or products manufactured therefrom, except intoxicating liquors, wine, or beer, when such products were grown or produced by such natural person in the state.
 (2) A wholesale farmers' produce market shall have the right to pay a tax of not more than $200 for a license that will entitle the market's stall tenants to engage in the selling of agricultural and horticultural products therein, in lieu of such tenants being required to obtain individual local occupational licenses to so engage.
"Local occupational license" is defined by s 205.022(1), F.S., in pertinent part, to mean "the method by which a local governing authority grants the privilege of engaging in or managing any business, profession, or occupation within its jurisdiction." (e.s.) Subsection (2) of this section defines "local governing authority" to include the governing body of any county.
While it is clear that s 205.064, F.S., applies to counties and has the effect of precluding the county from exacting any occupational license tax from natural persons coming under the terms of the statute, neither this statute nor any other provision of Ch. 205, F.S., dealing with local occupational license taxes levied by counties precludes a noncharter county from imposing proper regulatory restrictions under its police power on natural persons selling agricultural products grown or produced in the state. For a discussion of the distinction between the occupational license taxes imposed pursuant to Ch. 205, F.S., and regulatory fees or ordinances, see, AGO's 76-30 and 74-21. See also, Tamiami Trail Tours, Inc. v. City of Orlando, 120 So.2d 170
(Fla. 1960); and see, subsection (1) of s 205.022, F.S., which goes on to make it clear that a local occupational license under Ch.205, F.S., "shall not mean any fees or licenses paid to any board, commission, or officer for permits, registration, examination, or inspection. Unless otherwise provided by law, these are deemed to be regulatory and in addition to, and not in lieu of, any local occupational license imposed under the provisions of this chapter."
Concerning a noncharter county's authority to enact regulatory ordinances imposing restrictions on the selling of agricultural products, s 1(f), Art. VIII, State Const., in pertinent part, provides that noncharter counties "shall have such power of self-government as is provided by general or special law." The statutory implementation of this constitutional provision is contained in s 125.01, F.S. Subsection (1) of s 125.01, in relevant portion, provides:
 (1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power shall include, but shall not be restricted to, the power to:
* * *
 (h) Establish . . . and enforce . . . such business regulations as are necessary for the protection of the public.
* * *
 (w) Perform any other acts not inconsistent with law . . . and exercise all powers . . . not specifically prohibited by law.
Cf., State v. Orange County, 281 So.2d 310, 312 (Fla. 1973), noting that the object of Article VIII of the 1968 Constitution was to do away with the "local bill evil" (the necessity of counties going to the Legislature to obtain special enabling legislation). See also, AGO 81-48 (discussing Ch. 71-14, Laws of Florida, codified in the main as s 125.01, F.S., and Speer v. Olson, 367 So.2d 207
[Fla. 1978], and concluding that, in the absence of any provision of general or special law restricting or prohibiting a noncharter county from adopting a home rule ordinance to allow certain payments to its employees, noncharter counties have authority to enact ordinances providing for such payments to county employees).
Therefore, it would appear that a noncharter county exercising its home rule power as provided by s 1(f), Art. VIII, State Const., and s 125.01, F.S., as construed by the Florida Supreme Court in Speer v. Olson, supra, is empowered to enact an ordinance regulating the sale of agricultural products, if necessary, in the public interest or for the protection of the public. The necessity for and the reasonableness of any such local legislation must in the first instance be determined by the county commission. However, the exercise of such power or the enactment of any such ordinance may be subject to preemption by the state and is subject to and may not conflict with state law or certain constitutional inhibitions.
First, the regulatory power exercised by a county must be in the public interest. Any regulatory restrictions are enacted pursuant to the police power for the purpose of protecting the health, safety, and general welfare of the people. Further, such regulation must not be arbitrary or unreasonable. See, e.g., State v. Noel, 169 So. 549 (Fla. 1936); City of Miami Beach v. State,129 So.2d 696 (3 D.C.A.Fla., 1961); Hardage v. City of Jacksonville Beach, 399 So.2d 1077 (1 D.C.A.Fla., 1981); AGO's 74-319, 74-362. See also, AGO 74-21 which concluded among other things that "[t]he activity or vocation subject to regulation must be one affected with the public interest and then regulated only in the manner reasonably necessary to protect the public interest." And see, AGO 83-68 (noncharter county can regulate the consumption of alcoholic beverages at unlicensed alcohol vendor business premises ["bottle clubs"] by ordinance, if such regulation is directed to the goal of protecting the safety and welfare of county residents and if the classification of such establishments is not done in an arbitrary or unreasonable manner).
Second, the subject matter of the regulatory restrictions cannot be a matter preempted to the state and such local regulations may not conflict with any state law on the subject. See, Board of County Com'rs of Marion County v. McKeever, 436 So.2d 299 (5 D.C.A.Fla., 1983) (noncharter county could enact county ordinances not inconsistent with general or special law, and, as bearing upon application of such principle, ordinance is inconsistent or conflicts with general law if the ordinance and legislative provision cannot coexist); Campbell v. Monroe County,426 So.2d 1158 (3 D.C.A.Fla., 1983) (ordinance must not conflict with any controlling provisions of a state statute and if any doubt exists, doubt is to be resolved against the ordinance in favor of the statute); City of Miami Beach v. Rocio Corp., 404 So.2d 1066 (3 D.C.A.Fla., 1981), app. dism'd and pet. for rev. den.,408 So.2d 1092 (Fla. 1981) (ordinances are inferior to state law and must fail when conflict arises). In the Rocio Corp. case at p. 1070 the court stated: "Although legislation may be concurrent, enacted by both state and local governments in areas not preempted by the state, concurrent legislation enacted by municipalities may not conflict with state law. If conflict arises, state law prevails." The same principles are equally applicable to noncharter county ordinances. See also, AGO's 83-67, 81-48; and compare, Board of County Commissioners of Dade County v. Wilson, 386 So.2d 556
(Fla. 1980).
There are a number of general statutes which regulate agricultural products on a state-wide basis. See, for example, Chs. 502-503, F.S., regulating milk and milk products, among other things; Ch.504, F.S., specifying labeling requirements for certain agricultural products and prescribing penalties therefor; Ch. 573, F.S., dealing with the marketing of various agricultural products. Thus, at the time any specific measure to regulate the sale of any agricultural products is being considered by the county, consideration must be given to and a determination made that the provisions of any existing and relevant state law governing the specific subject matter of the local legislation do not preempt that matter to the state or conflict with the local legislation.
Therefore, it is my opinion that s 205.064, F.S., does not prohibit a county from regulating the sale of agricultural products grown or produced in the State of Florida, if such regulation is in the public interest or for the protection of the public, provided that the subject matter of any such local legislation is not preempted to the state and the local legislation does not conflict with state law.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General