# BATTEN, et al. v METROPOLITAN DADE COUNTY, etc.

## Case Nos. 89-25180 CA 18, 89-27652 CA 18, 89-28385 CA 18

Eleventh Judicial Circuit, Dade County

February 7, 1990

### APPEARANCES OF COUNSEL

**Donna Riselli Rougeux, Esquire** and **Joseph H. Weil, Esquire,** for plaintiffs.

**Robert A. Ginsburg, Esquire,** Dade County Attorney, **Murray A. Greenberg, Esquire,** First Assistant County Attorney and **Daniel A. Weiss, Esquire,** Assistant County Attorney, for defendant.

### OPINION OF THE COURT

ROBERT H. NEWMAN, Circuit Judge.

#### FINAL JUDGMENT

This consolidated cause came before the Court for non-jury final

hearing on December 20, 1989. The Court, having considered the evidence in light of the pleadings, argument of counsel and the applicable authorities, hereby finds as follows:

1. The three actions consolidated herein essentially constitute a neighborhood dispute involving the creation and establishment of the Keystone Point Security Guard Special Taxing District ("the District").

2. The evidence and pleading admissions show without dispute that the District was initiated, created and approved by the electorate pursuant to chapter 18, Code of Metropolitan Dade County, Florida ("the Code"), through the following sequence of events:

a. A petition for creation of the District duly signed by more than fifty percent (50%) of the resident owners of property within the proposed district was filed with the Clerk of the County Commission. The District was to provide security guard services, to be financed solely by means of special assessments levied and collected within the District.

b. The Board of County Commissioners enacted Ordinance No. 89-36 creating the special taxing district, subject to approval by the electorate, and then adopted Resolution No. R-453-89, calling a special election for the purpose of submitting to qualified electors residing in the District, for their approval or disapproval, the ordinance creating and establishing the District. A mail ballot was conducted, using ballots in the form prescribed by the Florida Election Code.

c. This Court denied the Plaintiffs' sworn motion to enjoin the counting of the ballots, and the Dade County Canvassing Board certified electoral approval of the District by a margin of 602 to 318, a majority of over sixty-five percent (65%).

3. In this consolidated proceeding, Plaintiffs seek to invalidate these election results and block implementation of the District under three separate complaints espousing four legal theories. The Plaintiffs' theories will be discussed seriatim.

## PROPRIETY OF MAIL BALLOT ELECTION

The Plaintiffs' first theory is that the use of a mail ballot election to approve the creation and establishment of the District runs afoul of section 101.6102(2)(c), Florida Statutes, of the Mail Ballot Election Act. This theory is wrong for two reasons.

First, the election to approve or disapprove creation of the District is not governed by the Mail Ballot Election Act, but by chapter 18 of the

Code. The specific authority governing creation of a special taxing district in Dade County is established by the Home Rule Amendment to the Florida Constitution, which states that the Board of County Commissioners

> [m]ay provide a method for establishing new municipal corporations, *special taxing districts,* and other governmental units in Dade County from time to time and provide for their government and prescribe their jurisdiction and powers.

§ (1)(e), Dade County Home Rule Amendment (emphasis supplied).

The foregoing constitutional provision is implemented by section 1.01 A(11) of the Dade County Home Rule Charter, which provides that the County may

> [b]y ordinance, *establish,* merge, and abolish *special purpose districts within which may be provided police* and fire *protection,* beach erosion control, recreation facilities, water, streets, sidewalks, street lighting, waste and sewage collection and disposal, drainage, *and other essential facilities and services.* All county funds for such districts shall be provided by service charges, special assessments, or general tax levies within such districts only. The Board of County Commissioners shall be the governing body of all such districts and when acting as such governing body shall have the same jurisdiction and powers as when acting as the Board; . . . (emphasis supplied).

The Florida appellate courts have consistently ruled that where the Dade County Home Rule Amendment contains a reservation of power to the Board of County Commissioners, and the Home Rule Charter implements that power, that method of achieving a result is *exclusive,* notwithstanding any provisions of state law to the contrary. This doctrine is, in short, the essence of home rule. Judge Charles Carroll, speaking for the Third District Court of Appeal, stated the principle as follows:

> The matter of changing boundaries of municipalities is one of the areas of autonomy conferred on Dade County by the Home Rule Amendment, with the result that the method provided therefor by the Home Rule Charter, pursuant to authorization by the Home Rule Amendment, is effective and *exclusive, notwithstanding the existence from time to time of a general state law which makes provision for some other method. Gray v Golden,* 89 So.2d 785, 791 (Fla. 1956); *Dade County v Young Democratic Club of Dade County,* 104 So.2d 636, 639 (Fla. 1958).

*City of Sweetwater v Dade County,* 343 So.2d 953, 954 (Fla. 3d DCA 1977) (emphasis supplied).

194

The phrase "establishing special taxing districts" [in § 1(e) of the Home Rule Amendment] can, in this instance, be substituted for "changing boundaries of municipalities" [in § 1(c) of the Home Rule Amendment] in the first line of the above quote. *Compare Dade County v Young Democratic Club of Dade County*, 104 So.2d 636 (Fla. 1958). When this is done, it is clear that the Constitution gives Dade County, not the State, the authority to establish and maintain special taxing districts within Dade County.

Second, assuming *arguendo* the applicability of the Mail Ballot Election Act, the election was not a "referendum to approve the levy of taxes or the issuance of bonds" within the ambit of section 101.6102(2)(c). Rather, the election was held for the purpose of submitting to qualified electors for their approval or disapproval the ordinance creating and establishing the District. *See* Ordinance No. 89-36 (County's Exhibit 2); Resolution No. R-453-89 (County's Exhibit 4); Certificate of Dade County Canvassing Board of the Results of a Special Taxing District Election (County's Exhibit 7). Creating and establishing a special assessment district is clearly distinguishable from levying a tax. "A tax is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various general functions the sovereign is called on to perform. Special assessments, on the other hand, are designed to provide the means to accomplish particular purposes." 48 Fla.Jur.2d, *Special Assessments* § 2 (1984). Here, the particular purpose to be accomplished is the establishment and creation of a security guard district in the Keystone Point neighborhood. Plainly, then, even assuming *arguendo* applicability of the Mail Ballot Election Act, the District election was not "a referendum to approve the levy of taxes or the issuance of bonds" prohibited by the Act.

Based on the foregoing analysis, Plaintiffs are not entitled to relief on their first legal theory.

## PROPRIETY OF ELECTION NOTICE

The Plaintiffs' second theory is that the election results should be invalidated because published notice of the election violated section 100.342, Florida Statutes. The evidence was undisputed, however, that notice of election was published in the Miami Herald on May 19, 1989 and May 30, 1989. Thus, notice was published during the fifth and third weeks prior to the week of the June 20 election.

Because the timing of publication undeniably complied with section 100.342, no wrongdoing by the Defendant County has been shown

**195**

with respect to notice of the election, and Plaintiffs are entitled to no relief on their second legal theory.

## DEPRIVATION OF RICHARD BATTEN'S OPPORTUNITY TO CAST A BALLOT AGAINST THE DISTRICT

The third legal theory is one asserted by a lone plaintiff. Richard Batten alleges that by operation of the notice statute he was deprived of an opportunity to vote. Initially, it should be noted that there is nothing in the legislative history of section 100.342 to indicate that its intent is to provide publication so far in advance of an election that ineligible electors should have time to register and then vote in that election. To the contrary, it appears that publication during the fifth and third weeks before the election is intended to give notice of the election to already eligible voters. Plaintiffs' remedy, if any, is therefore legislative. Constitutionality of the statutory requirements for publication has not been challenged herein, and the wisdom of those requirements is a matter for the Legislature, not the courts.

Moreover, it was Plaintiff Batten's own inaction—and not any misconduct by Dade County—which resulted in Batten's failure to cast a ballot. Batten registered to vote in 1972; was purged from the rolls for failure to vote; re-registered in 1983, and was purged again in 1988, again for failure to vote in any election. Mr. Batten has not voted in any election since 1976. Mr. Batten was, however, present at a March 8 or 9, 1989 community meeting at which Dade County staff explained the special election and other procedures which would determine whether the District would be created and approved. Mr. Battten had more than two months following this meeting in which to re-register and regain his eligibility to vote in the June 20 District election.

Based on the foregoing legal and factual analysis, the Court declines to invalidate the election on the basis of Mr. Batten's failure or alleged "lack of opportunity" to vote.

## ALLEGED IMPROPER USE OF ADDRESS LABELS BY THE HOMEOWNERS' ASSOCIATION

The gravamen of the Plaintiffs' fourth and last theory is that the election should be invalidated because the Keystone Point Homeowners Association misused a mailing list and gummed labels obtained from the Metropolitan Dade County Elections Department. Plaintiffs alleged that the County itself had violated election laws. The testimony was unequivocal; however, that the County did nothing improper.

David Leahy, Supervisor of Elections, testified without contradiction

196

that neither voting list nor gummed labels had been issued in conjunction with the subject election except to persons specifically authorized by statute to obtain them. Far from producing the requisite evidence of wrongdoing by Elections Deparment staff, the Plaintiffs stipulated in open court (at the temporary injunction hearing) as follows:

"My long experience with Mr. Leahy and his office, I don't believe that Mr. Leahy, under any set of circumstances, Mr. Leahy or his staff, would violate any statute."

Transcript at 19. If another person who legally obtained a voters' list or gummed labels improperly used them, a cause of action may exist against that person, but not against Metropolitan Dade County, the only defendant herein.

4. It is axiomatic that no court can grant relief to a complainant absent a showing that the injury alleged was caused by some wrongdoing or legal breach by the defendant. The evidence herein discloses no wrongdoing by the County, which was the only defendant in these proceedings. Any injury suffered by the Plaintiffs herein was not caused by the County. Consequently, no relief can be granted to the Plaintiffs herein on any of the four legal theories asserted against the County.

Accordingly, it is

ORDERED and ADJUDGED:

1. That judgment is hereby entered against the Plaintiffs and in favor of Defendant Metropolitan Dade County;

2. That this Court retains jurisdiction of this cause for the purpose of enforcing the provisions of this judgment.