Mr. Robert A. Ginsburg Metropolitan Dade County Attorney 111 Northwest 1st Street, Suite 2810 Miami, Florida 33128-1993
Dear Mr. Ginsburg:
You have asked for my opinion on substantially the following question:
Is Dade County authorized to create a county-wide solid waste management special assessment district by ordinance and without a referendum?
In sum:
Dade County may not create a county-wide solid waste management special assessment district by ordinance without securing the consent or approval of the affected incorporated areas to be included within the district, although this consent may be obtained from each affected municipality without need for a referendum.
Pursuant to section 403.706(1), Florida Statutes, Dade County has the responsibility and power "to provide for the operation of solid waste disposal facilities to meet the needs of all incorporated and unincorporated areas of the county." You ask whether, under Florida statutory and constitutional law, Metropolitan Dade County is authorized to meet this responsibility by creating a county-wide special district in which special assessments will fund the costs of facility closure, environmental remediation, capacity availability and countywide services. In addition, you are concerned whether a referendum requirement is imposed prior to the imposition of any such special assessment. Chapter 403, Florida Statutes, does not authorize the levying and collection of a special assessment for these purposes, and other statutory or constitutional support would have to be found.[1]
Metropolitan Dade County is a home rule county with broad home rule powers under Article VIII, section 11 of the 1885 Florida Constitution, as reenacted by Article VIII, section 6(e), Florida Constitution of 1968.[2] Provisions of the 1885 Constitution state that the charter itself "[m]ay grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County . . . and to do everything necessary to carry on a central metropolitan government in Dade County."[3] Further, the charter "[m]ay provide a method for establishing new municipal corporations, special taxing districts, and other governmental units in Dade County from time to time and provide for their government and prescribe their jurisdiction and powers."[4]
According to your letter, the Dade County Home Rule Charter section 1.01(A) authorizes the board of county commissioners to:
(9) Provide and regulate or permit municipalities to provide and regulate waste and sewage collection and disposal. . . . (10) Levy and collect taxes and special assessments . . . subject to such limitations, as may be provided by law. (11) By ordinance, establish, merge, and abolish special purpose districts within which may be provided . . . waste and sewage collection and disposal . . . and other essential facilities and services. All county funds for such districts shall be provided by service charges, special assessments, or general tax levies within such districts only.
The Constitution and the Dade County Charter authorize the adoption of an ordinance creating a special district or benefit unit to provide waste collection and disposal and provide that the county may impose and collect a special assessment for such services.[5] Therefore, the issue to be resolved is not whether an ordinance may be adopted which would create a special district or benefit unit and impose such a special assessment, but whether this may be done without the consent of the electors of the municipalities that would be included within the special district.[6]
The general authority granted to Dade County under the enabling section of the 1885 Constitution is circumscribed by subsections (5) and (6) of section 11:
(5) [T]he home rule charter provided for herein shall not conflict with any provision of this Constitution nor of any applicable general laws now applying to Dade County and any other one or more counties of the State of Florida except as expressly authorized in this section nor shall any ordinance enacted in pursuance to said home rule charter conflict with this Constitution or any such applicable general law except as expressly authorized herein . . . . (6) Nothing in this section shall be construed to limit or restrict the power of the Legislature to enact general laws which shall relate to Dade County and any other one or more counties of the State of Florida or to any municipality in Dade County and any other one or more municipalities of the State of Florida relating to county or municipal affairs and all such general laws shall apply to Dade County and to all municipalities therein to the same extent as if this section had not been adopted and such general laws shall supersede any part or portion of the home rule charter provided for herein in conflict therewith, and shall supersede any provision of any ordinance enacted pursuant to said charter and in conflict therewith, and shall supersede any provision of any charter of any municipality in Dade County in conflict therewith.
Further, in subsection (9) of section 11 it is declared to be the intent of the Legislature and the electors of Florida that
the provisions of this Constitution and general laws which shall relate to Dade County . . . shall be the supreme law in Dade County, Florida, except as expressly provided herein and this section shall be strictly construed to maintain such supremacy of this Constitution and of the Legislature in the enactment of general laws pursuant to this Constitution.
It is clear that the provisions of the Dade County Home Rule Charter and the ordinances adopted pursuant thereto must be in accordance with general law unless there is express constitutional authorization otherwise.[7] Nothing in the Constitution or the Dade County Charter of which I am aware would authorize the imposition of special assessments on municipal residents by the county without the consent of such residents.[8]
Section 1.01(11) of the Dade County Code provides that the board of county commissioners has the power to:
By ordinance, establish, merge, and abolish special purpose districts within which may be provided . . . waste and sewage collection and disposal. . . . All county funds for such districts shall be provided by service charges, special assessments, or general tax levies within such districts only. The Board of County Commissioners shall be the governing body of all such districts and when acting as such governing body shall have the same jurisdiction and powers as when acting as the Board . . ..
Nothing in this code provision authorizes Dade County to create a special purpose district that includes incorporated areas without the consent of the residents of these areas. In contrast, section 18-2 of the code authorizes the creation of special taxing districts for the purpose of acquiring, constructing, reconstructing and installing certain public improvements. As stated in that section:
Any such special taxing district may embrace not only an unincorporated area in the County but also all or a part of one (1) or more municipalities in the County; provided however, that no such district shall be comprised solely of a municipality or embrace all or a part of a municipality without the approval of the governing body of such municipality. (e.s.)
Clearly, the legislative body of the county was cognizant of and recognized that for certain purposes the inclusion of incorporated areas within special districts could be accomplished. However, in those situations, the approval and consent of the governing body of the municipality is required.
General statutory law governing noncharter counties reflects this requirement for approval by municipalities of their inclusion in certain special districts. Section 125.01(1), Florida Statutes (1994 Supp.), authorizes noncharter counties to:
(q) Establish, and subsequently merge or abolish those created hereunder, municipal service taxing or benefit units for any part or all of the unincorporated area of the county, within which may be provided . . . garbage and trash collection and disposal, waste and sewage collection and disposal . . . and other essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within such unit only. Subject to the consent by ordinance of the governing body of the affected municipality . . . the boundaries of a municipal service taxing or benefit unit may include all or part of the boundaries of a municipality in addition to all or part of the unincorporated areas. . . . (r) Levy and collect taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit, and special assessments . . . which power shall be exercised in such manner, and subject to such limitations, as may be provided by general law. There shall be no referendum required for the levy by a county of ad valorem taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit. (e.s.)
Further, section 125.01(5)(a), Florida Statutes (1994 Supp.), provides that:
To an extent not inconsistent with general or special law, the governing body of a county shall have the power to establish, and subsequently merge or abolish those created hereunder, special districts to include both incorporated and unincorporated area subject to the approval of the governing body of the incorporated area affected, within which may be provided municipal services and facilities from funds derived from service charges, special assessments, or taxes within such district only. Such ordinance may be subsequently amended by the same procedure as the original enactment. (e.s.)
Thus, while Chapter 125, Florida Statutes (1994 Supp.), authorizes counties to create special districts and municipal service benefit units for providing municipal services, in those instances that the statutes extend this power, it is qualified by a requirement that residents of incorporated areas included within such a district have the power to approve their inclusion in the district and the levy of special assessments against them for such services.[9]
A review of the Constitution, charter provisions, Dade County Code and statutes all leads me to the conclusion that the residents of municipalities to be included in the proposed special purpose district must be allowed to approve or disapprove their inclusion in a solid-waste management special assessment district and the levying and collection of an assessment for these services. I cannot say that a referendum is necessary, as the statutory provisions discussed above do not impose such a requirement; however, some evidence of the consent of the subject municipalities to inclusion in such a district, such as approval by ordinance of the governing body of the affected municipality, would appear to be appropriate.
Therefore, it is my opinion that Dade County is not authorized to create a county-wide solid waste management special assessment district by ordinance without securing the approval and consent of the affected incorporated areas to be included within the district.[10]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] While s. 403.706, Fla. Stat., recognizes that these responsibilities may be undertaken by a special district under the specified circumstances, the statute contemplates that payment for the handling and disposition of solid waste will be made by collecting user fees. See, s. 403.706(1), Fla. Stat. (1993).
[2] See, Art. VIII, s. 6(e), Fla. Const., which provides for the continued force and effect of Article VIII, s. 11, of the 1885 Florida Constitution.
[3] Article VIII, s. 11(1)(b), Fla. Const. 1885.
[4] See, Art. VIII, s. 11(e), Fla. Const. 1885.
[5] Cf., Ops. Att'y Gen. Fla. 90-75 (1990) and 90-39 (1990) (the imposition of special assessments is not restricted to the construction of public improvements but may also be imposed for the furnishing of certain services, among them, fire protection or garbage disposal). And see, Op. Att'y Gen. Fla. 94-87 (1994), discussing requirements for a valid special assessment.
[6] Cf., Madison County v. Foxx, 636 So.2d 39, 48 (Fla. 1st DCA 1994), in which the county raised the issue of "whether section125.01(1)(q)2. is the exclusive means by which the County may impose special assessments within municipalities, or whether section 125.01(1)(r) grants counties the broad home rule power to impose special assessments county-wide unless affected cities opt out by passing inconsistent legislation." The court did not resolve this issue as it struck down the ordinances involved on other grounds. However, the court stated that:
We have briefly, but by no means exhaustively, outlined the legislative history of the pertinent provisions of section 125.01
to illustrate that this statute, and its legislative history, do not conclusively answer the question of the authority of counties to impose special assessments within municipalities, nor does the body of case law cited by the parties. That experienced lawyers, who have argued cases on the meaning of these statutes and the constitutional provisions for several years — one nearly a quarter of a century ago — argue so vehemently such divergent interpretations of these statutes, is testament to their confusing message and the need for legislative action. In that vein, it is fundamentally a legislative task to define intergovernmental relationships between cities and counties.
[7] See, Board of County Commissioners of Dade County v. Wilson,386 So.2d 556, at 559-560 (Fla. 1980).
[8] I would note that s. 18-2 of the Dade County Code sets forth purposes for which districts may be created. Special taxing districts may be created in Dade County for a number of specifically designated special services including "[s]uch other facilities or services which may be deemed essential by the Board." Section 18-2(k), Dade County Code. Any such special taxing district may embrace both an unincorporated area of the county and "all or a part of one (1) or more municipalities in the County; provided however, that no such district shall be comprised solely of a municipality or embrace all or a part of a municipality without the approval of the governing body of such municipality." This recognition of the necessity of municipal approval for the imposition of taxes strongly suggests that a similar approval should be required for the imposition of special assessments.
[9] See also, s. 197.3631, Fla. Stat., which provides:
Non-ad valorem assessments as defined in s. 197.3632 may be collected pursuant to the method provided for in ss. 197.3632 and197.3635. Non-ad valorem assessments may also be collected pursuant to any alternative method which is authorized by law . . . . Section 197.3632 is additional authority for local governments to impose and collect non-ad valorem assessments supplemental to the home rule powers pursuant to ss. 125.01 and 166.021 and chapter 170, or any other law. Any county operating under a charter adopted pursuant to s. 11, Art. VIII of the Constitution of 1885, as amended, as referred to in s. 6(e), Art. VIII of the Constitution of 1968, as amended, may use any method authorized by law for imposing and collecting non-ad valorem assessments. (e.s.)
Although this section provides a supplemental method for the levy and collection of special assessments by local governments, nothing therein authorizes the imposition of a special assessment on municipal residents without a referendum.
[10] Compare, Op. Att'y Gen. Fla. 90-75 (1990) (a municipal service benefit unit established pursuant to s. 125.01(1)(q) and (r), F.S., may impose special assessments that are not uniform to provide municipal services in the unincorporated areas of the county without approval of the electors of the municipal service benefit unit); Op. Att'y Gen. Fla. 90-31 (1990) (the Board of County Commissioners of Gadsden County has determined that a real and substantial benefit is provided to the incorporated areas in the county and has appropriated municipal tax moneys, along with other county moneys, to fund any shortfall in the mandatory garbage collection program; therefore, municipal residents in Gadsden County may not be excluded from voting in a referendum concerning mandatory garbage collection in the unincorporated area of the county).