Dear Mr. Gabriel:
On behalf of a majority of the members of the City of Marco Island City Council, you ask the following questions:
1. Was an operating expenditure limitation in the city's original charter created by special act of the Legislature and approved by referendum, valid and constitutional?
2. If so, was a 2002 amendment to the operating expenditure limitation passed by the city council and approved by referendum valid and constitutional?
3. May the city make additional amendments to the operating expenditure limitation subject to referendum approval without affecting the constitutionality and validity of the existing operating expenditure limitation?
Initially, it should be noted that this office will not comment upon the constitutionality of any duly enacted law, charter or code provision, but must presume that such legislation is valid and constitutional unless and until a court of competent jurisdiction declares otherwise.[1] Accordingly, the following discussion will only address your third question in relation to the city's ability to impose operating expenditure limitations by amendment of the city charter.
Section 2(a), Article VIII of the Florida Constitution, provides that "[m]unicipalities may be established or abolished and theircharters amended pursuant to general or special law." (e.s.) Moreover, municipalities have broad home rule powers granted by Article VIII, section 2(b) of the Florida Constitution to "exercise any power for municipal purposes, except when expressly prohibited by law."[2] The Legislature has stated its intent "to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter[.]"[3]
In Attorney General Opinion 2009-12, this office was asked whether a city's charter could be amended to require referendum approval for any capital improvement project exceeding $500,000, without conflicting with the city's home rule powers. The opinion discusses whether a city's charter may be amended to impose restrictions on the exercise of municipal powers, noting that section 166.031(1), Florida Statutes, authorizes the amendment of a city charter by referendum approval "to any part or to all of said charter except that part describing the boundaries of such municipality." (e.s.) A municipal charter or charter amendment, however, may not prohibit the levy of ad valorem taxes without referendum approval.[4] The opinion concludes, absent a general law relating to the expenditure of municipal funds for a specific capital project, that the city could amend its charter to restrict the expenditure of capital outlays pursuant to section 166.031, Florida Statutes.
Previous opinions of this office have similarly considered the limitations on the amendment of a city's charter. For example, in Attorney General Opinion 82-101, this office was asked whether a city could amend its charter to limit or restrict the exercise of specific corporate, legislative, and governmental powers. In that opinion, citizens opposed the transfer of utility revenues to the city's general fund for general operating purposes. Based upon the home rule powers of the city and the explicit authority to amend the charter pursuant to section 166.031, Florida Statutes, this office concluded that the city's charter could be amended to restrict the transfer of utility revenues to the city's general fund, thereby limiting the city's power.
In Attorney General Opinion 90-38, this office concluded that a city charter could be amended to require referendum approval for the issuance of municipal bonds. However, in Attorney General Opinion 86-89, this office stated that an attempt to amend a charter to provide that no ad valorem taxes on real and personal property could be imposed without referendum approval would violate section 195.207, Florida Statutes, prohibiting a municipal charter provision limiting the governing body's authority to levy ad valorem taxes.[5]
While this office determined in Attorney General Opinion 2001-04 that a county charter could not be amended to place a cap on the annual increase in the county's operating budget, [6] Attorney General Opinion 2009-12 recognized that the statutes governing the adoption of a municipality's budget are not as extensive as those governing county budgets. Section 166.241, Florida Statutes, merely requires a municipality for each fiscal year to adopt a budget which "must be adopted by ordinance or resolution unless otherwise specified inthe respective municipality's charter."[7] (e.s.) This language would suggest that a municipality's charter may affect the method by which a municipality's budget may be adopted.
This office has commented informally on whether an amendment to a municipal charter may require referendum approval of capital projects, appropriations, taxes, and salaries of municipal officers and employees.[8] While finding no general laws prohibiting a charter provision requiring referendum approval of municipal salaries, the opinion noted that the propriety of requiring a citizens' vote for capital projects may depend upon the particular project and any general laws providing for such projects.
In light of the discussion above and absent a general law prohibiting the amendment of a charter to limit expenditures, it would appear that the city's charter may be amended to impose limitations on the operating expenditures of the city. Accordingly, it is my opinion that the city may amend its charter, subject to the provisions in Chapter 166, Florida Statutes, to address operating expenditure limitations.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] See, e.g., Ops. Att'y Gen. Fla. 02-79 (2002) and 95-32 (1995); cf. Belk-James, Inc., v.Nuzum, 358 So. 2d 174 (Fla. 1978); Pickerill v. Schott,55 So. 2d 716 (Fla. 1951); and State ex rel. Atlantic Coast LineRailroad Company v. State Board of Equalizers,94 So. 681 (Fla. 1922). As discussed in this office's statement regarding attorney general opinions, "[i]n order not to intrude upon the constitutional prerogative of the judicial branch, opinions generally are not rendered on questions pending before the courts or on questions requiring a determination of the constitutionality of an existing statute or ordinance."
[2] Section 166.021, Fla. Stat.
[3] Section 166.021(4), Fla. Stat.
[4] See Op. Att'y Gen. Fla. 86-89 (1986) citing to s. 195.207, Fla. Stat., expressly forbidding charter limitations upon a municipality's authority to levy ad valorem taxes or utility services taxes. Section 7.01, Marco Island City Charter, provides that the charter may be amended in accordance with the provisions for charter amendment in Chapter 166, Florida Statutes, or as otherwise provided by general law.
[5] Section 195.207, Fla. Stat., provides:
 "No municipal charter may prohibit or limit the authority of the governing body to levy ad valorem taxes or utility service taxes authorized under s. 167.431. Any word, sentence, phrase, or provision, of any special act, municipal charter, or other law, that prohibits or limits a municipality from levying ad valorem taxes within the millage limits fixed by s. 9, Art. VII of the State Constitution, or prohibits or limits a municipality from levying utility service taxes within the limits fixed by s. 167.431, is hereby nullified and repealed."
[6] The opinion recognizes that Florida courts have stricken local provisions seeking to limit a county commission's discretion in setting an annual budget and millage rate in contravention of Chapters 129 and 200, Florida Statutes, which set forth the statutory framework by which counties must establish their budgets and millage rates. See Board of County Commissioners of MarionCounty v. McKeever, 436 So. 2d 299 (Fla. 5th DCA 1983), pet.for rev. den., 446 So. 2d 99 (Fla. 1984); Board of CountyCommissioners of Dade County v. Wilson,386 So. 2d 556 (Fla. 1980); Charlotte County Board of CountyCommissioners v. Taylor, 650 So. 2d 146 (Fla. 2d DCA 1995).
[7] Section 166.241(2), Fla. Stat.
[8] Informal Op. to Mr. Kirk S. Warren, October 16, 2007.